**Billy JULIAN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 48A02–0305–CR–406.

Court of Appeals of Indiana.

June 29, 2004.

Transfer Denied Sept. 28, 2004.

Bruce A. Stuard, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellant–Defendant, Billy Julian (Julian), appeals his convictions for Count I, arson, a Class B felony, Ind.Code § 35–43–1–1(A)(1); Count II, burglary, a Class C felony, I.C. § 35–43–2–1; and Count III,

attempted theft, a Class D felony, I.C. § 35–43–4–2(A).

We affirm.

### ISSUES

Julian raises five issues on appeal, which we consolidate and restate as follows:

1. Whether the trial court erred in allowing the State to impeach its own witness;

2. Whether the trial court erred in allowing the State's expert witness, Timothy Murray, to testify that the fire in the school was intentionally set;

3. Whether the trial court violated its separation of witnesses order by permitting a State's witness, who remained in the courtroom, to testify after hearing the testimony of other witnesses; and

4. Whether the trial court properly sentenced Julian.

### FACTS AND PROCEDURAL HISTORY

In the late evening of March 11, 2001, Julian, Josh Rider (Rider), and J.H., a juvenile, broke into Frankton High School (the school) in Madison County, Indiana. The three perpetrators entered the school through a door on the roof of the school, removed a ceiling tile from above the ceiling, and climbed down a ladder into the hallway. After obtaining an oxyacetylene torch from the industrial arts classroom, the young men entered the school's main office suite. The torch was then used to burn wiring in the enunciator panel that serves as the control box for the school's fire alarm system in the main office. The torch was also used in an attempt to open a large safe where prescription drugs and money were stored in the main office. However, during this failed attempt to open the safe, molten steel dripped onto the carpet, causing a fire.

William Amick (Amick), Head of Security for Frankton–Lapel Schools, responded first to the scene after being alerted of the fire alarm through his pager shortly after 12:30 a.m. on March 12, 2001. Once the fire department arrived and the fire was brought under control, Amick patrolled the perimeter of the school and school grounds to prevent anyone from entering the area. Later in the afternoon of March 12, 2001, while still on patrol, Amick noticed a young man, who he recognized as J.H., walking on the sidewalk near the football stadium. Amick observed that J.H. was covered in soot. J.H. explained his appearance, saying that he had been burning trash in his backyard.

Amick informed Madison County Sheriff's Department Detective Samuel Hanna (Detective Hanna) of his encounter with J.H. Detective Hanna arranged to interview J.H. on March 16, 2001, about the fire at the school. During the interview, J.H. implicated Julian, Rider, and himself as being involved in the burglary and fire. Meanwhile, during the course of the investigation, Detective Hanna recovered three red fibers from the top of a security gate inside the school. Investigators previously determined that at least one of the perpetrators had climbed over the gate upon entering the school through the ceiling. Forensic analyses of the fibers revealed that they were "very similar" to those in a red shirt frequently worn by Julian. (Transcript p. 123).

On March 16, 2001, Julian was arrested. On April 3, 2001, the State filed an information against Julian, charging him with Count I, arson, a Class B felony, I.C. § 35–43–1–1(A)(1); Count II, burglary, a Class C felony, I.C. § 35–43–2–1; and Count III, attempted theft, a Class D felony, I.C. 35–43–4–2(A). On March 6, 2003, the State filed an additional information, charging Julian with Count IV, criminal

mischief, a Class C felony, I.C. § 35–43–1–2(B).

On March 11, 2003, through March 14, 2003, the trial court conducted a jury trial in this matter. On March 14, 2003, the jury returned a verdict finding Julian guilty as charged. On March 31, 2003, a sentencing hearing was held in which the trial court sentenced Julian to the Department of Correction for eighteen years on Count I, with fifteen years executed and three years suspended to probation; six years executed on Count II to run concurrent with Count I; and three years executed on Count III to run concurrent with Count I. The trial court also vacated the conviction on Count IV, pursuant to Julian's request.

Julian now appeals. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

### I. Impeachment of State's Witness

#### A. Trial Court Error

■ Julian first argues that the trial court erred by allowing the State to impeach its own witness. Specifically, Julian contends that, when the State impeached J.H., who was testifying as a State's witness, the prosecutor improperly offered an out-of-court statement by J.H. as substantive evidence, which is contrary to law.

■ Indiana Evidence Rule 607 authorizes a party to impeach the credibility of its own witness. *Impson v. State*, 721 N.E.2d 1275, 1281 (Ind.Ct.App.2000). However, the rule is abused if the party is permitted to call a co-defendant as a witness, when the party knows that the co-defendant will not give useful evidence, just so the party can introduce otherwise inadmissible hearsay evidence against the defendant, "in the hope that the jury would miss the subtle distinction between impeachment and substantive evidence—or, if it didn't miss it, would ignore it." *Id.* (quoting *U.S. v. Webster*, 734 F.2d 1191, 1192 (7th Cir.1984)). To determine whether an abuse of the rule has occurred, we consider whether the prosecutor examined the witness for the primary purpose of placing before the jury otherwise inadmissible evidence. *Id.* Nevertheless, otherwise inadmissible evidence that is placed before the jury when the State has a legitimate basis to call the witness will not be considered improper. *Id.*

In the instant case, the trial court conducted multiple hearings outside the presence of the jury regarding the State's desire to call J.H. as a witness and Julian's objection thereto. During these hearings, Julian objected strenuously that the State was attempting to place J.H. on the stand to present otherwise inadmissible evidence cloaked as impeachment in violation of *Appleton v. State*, 740 N.E.2d 122, 125 (Ind. 2001)(where our supreme court held that "a party is forbidden from placing a witness on the stand when the party's sole purpose in doing so is to present otherwise inadmissible evidence cloaked as impeachment"). The trial court eventually granted the State's request to call J.H. as a witness, explaining that, "the State [has] the right to impeach. It's not hearsay. It's not confrontational, because it's impeachment. It's not substantive evidence. So the State's request is granted." (Tr. pp. 291–2).

However, as the State launched into a line-by-line impeachment of J.H., to which Julian objected, the trial court sustained Julian's objection and advised the State that it could only inquire into an explanation of the inconsistencies in J.H.'s out-of-court statement and his in-court testimony. Thereafter, the trial court admonished the jury that the evidence of prior inconsistent statements by J.H. were not offered for

their truthfulness, "but only to show that [J.H.] is not a truthful person." (Tr. p. 319).

After reviewing the record, we conclude that the trial court committed no error by allowing the State to call J.H. as a witness and then proceed to impeach him. According to the facts before the jury, J.H. was first encountered by Amick, who saw J.H. walking near the school football stadium the afternoon following the fire; J.H. was covered in soot. When Amick questioned J.H., he explained that the soot resulted from his burning trash in his backyard. Amick reported J.H.'s suspicious appearance to Detective Hanna, who arranged to interview J.H. a few days later. Also before the jury was Hanna's testimony that, as a result of his interview with J.H., Julian became a suspect in the school burglary and fire. Thus, if the State had omitted J.H. from its list of witnesses, the jury could reasonably have wondered why the State was reluctant to question this apparently crucial witness. *See Impson,* 721 N.E.2d at 1282.

Moreover, the trial court closely monitored the effects of its ruling to allow the State's impeachment of J.H., and, as the State's questioning began to amount to an impermissible line-by-line impeachment, the trial court sustained Julian's objection and advised the State to redirect its questions to give J.H. the opportunity to explain his inconsistencies. This approach is acceptable under *Appleton,* where our supreme court held that "[o]nce [the witness] denied Appleton's involvement in the events, the State should have made [the witness] aware ·of specific portions of his testimony that were inconsistent with statements he made prior to trial and given him an opportunity to explain those inconsistencies." *See Appleton,* 740 N.E.2d at 126; *see also Martin v. State,*

779 N.E.2d 1235, 1243 (Ind.Ct.App.2002), *trans. denied.*

We are mindful that the State may have been able to place more of J.H.'s out-of-court statement in front of the jury than would be preferred, especially in light of the fact that Julian offered to stipulate that the out-of-court statement was untruthful in order to make the impeachment unnecessary. *See Appleton,* 740 N.E.2d at 125. In addition, we are aware of the fact that, once J.H. admitted to the inconsistent prior statement, he had effectively impeached himself and further evidence was unnecessary for impeachment purposes. *See id.* Nonetheless, as stated above, J.H. was a key witness to the State and his absence as a witness would most likely have been noticed by the jury. *See Impson,* 721 N.E.2d at 1282. For these reasons, we find that the trial court committed no error in permitting the State to call J.H. as a witness and then impeach him.

### B. Unfair Prejudice

■ Nevertheless, Julian maintains that, even if the State properly impeached J.H. through the use of a prior inconsistent statement, the probative value of his testimony is significantly outweighed by the unfair prejudice of the jury considering the impeachment testimony as substantive evidence. We disagree.

■ A trial court possesses broad discretion in ruling on the admissibility of evidence. *Appleton,* 740 N.E.2d at 123. Pursuant to Evid. R. 401, evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *See Sanders v. State,* 724 N.E.2d 1127, 1131 (Ind.Ct.App. 2000). That said, under Evid. R. 403, the trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice,

confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. *Id.* The trial court has wide latitude in weighing the probative value of evidence against the potentially prejudicial effects of its admission. *Id.* The determination reached by the trial court as a result of the Evid. R. 403 balancing test is reviewed for an abuse of discretion by this court. *Id.*

■■ First, we have already determined above that the trial court monitored the State's impeachment of J.H. in such a way as to keep it within acceptable limits. Furthermore, the portions of J.H.'s prior inconsistent statement that were placed before the jury were unlikely to tip the scales against Julian any more than the abundant circumstantial evidence of his guilt. However, we also find that, if any error resulted from J.H.'s testimony, that error is harmless. *See Appleton,* 740 N.E.2d at 124 (even if a trial court errs in admitting evidence, we will not overturn the conviction if the error is harmless). An error is viewed as harmless if its probable impact on the jury is sufficiently minor so as not to affect a party's substantial rights. *Id.*

In the present case, the State presented several other witnesses who place Julian at the scene of the crime, as well as witnesses who testified that Julian admitted to them his involvement in the burglary and fire at the school. Moreover, red fibers found on one of the gates in the school after the blaze were matched to a red shirt frequently worn by Julian. Thus, we find that the probative value of the incriminating evidence against Julian substantially outweighs the danger of unfair prejudice that would result from the possibility of the jury considering portions of a prior inconsistent statement from J.H. as substantive evidence. *See* Evid. R. 403; *see*

*also Appleton,* 740 N.E.2d at 124; *Pickens v. State,* 764 N.E.2d 295, 299 (Ind.Ct.App. 2002), *trans. denied.* In addition, the trial court admonished the jury, subsequent to J.H.'s testimony, that his prior inconsistent statements were not offered for their truthfulness; rather, they were offered to show that he is not a truthful person. The trial court also read a similar final instruction. Accordingly, we hold that the trial court did not abuse its discretion in allowing the State to present evidence of J.H.'s prior inconsistent statements to the jury. *See Sanders,* 724 N.E.2d at 1131.

## II. *Expert Testimony*

■■ Next, Julian argues that the trial court erred when it allowed the State's expert witness to testify that the fire in the school was intentionally set. In particular, Julian contends that the trial court violated Evid. R. 704(b) when it permitted the State's witness, arson investigator Timothy Murray (Murray) of the State Fire Marshall's Office, to testify that the fire in the school was intentionally set to cover up evidence of a burglary.

■■■ . Admission of opinion testimony is within the discretion of the trial court. *Belser v. State,* 727 N.E.2d 457, 462 (Ind. Ct.App.2000), *trans. denied.* Pursuant to Indiana Evidence Rule 702(a), the trial court has the discretion to allow a witness, who is "qualified as an expert by knowledge, skill, experience, training, or education," to testify in the form of an opinion, "if scientific, technical or specialized knowledge will assist the trier-of-fact to understand the evidence or determine a fact in issue." *Id.*; Evid. R. 702(a). However, Indiana Rule of Evidence 704(b) provides, "[w]itnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions."

At trial, Murray testified, during direct examination, that the fire was intentionally set, to which Julian objected and a hearing was held outside the presence of the jury.[1] During this hearing the State elicited testimony from Murray that qualified him, without objection from the defense, as an expert witness with regard to arson. The trial court also overruled Julian's objection to Murray's testimony that the fire was intentionally set. When the jury returned, Murray testified that, in his expert opinion, the fire was intentionally set. Murray explained that the fire started as a result of molten metal dripping onto the flammable acrylic carpeting, that arson is frequently used to cover up burglaries, and that the wires in the control panel for the fire alarm showed very heavy localized burning that was consistent with the very high heat conditions from the tip of an oxyacetylene torch.

Consequently, contrary to Julian's assertions, Murray merely testified that the fire was set intentionally, not that Julian intended to set the fire. Therefore, Murray did not violate Evid. R. 704(b) by testifying as to the intent, guilt, or innocence of Julian. Likewise, the trial court committed no error in overruling Julian's objection and allowing Murray's testimony into evidence. *See Belser,* 727 N.E.2d at 462.

### III. *Separation of Witnesses*

■ Julian also contends that the trial court violated its separation of witnesses order by permitting the State to call Detective Hanna, who remained in the courtroom as the State's representative, to return to the witness stand twice to testify after hearing the testimony of other wit-

nesses. We find Julian's argument unavailing.

■ Indiana Evidence Rule 615 requires a trial court to grant the request of a party for a witness separation order except for certain witnesses identified by the rule as not being subject to exclusion. *Fourthman v. State,* 658 N.E.2d 88, 90 (Ind.Ct.App.1995), *trans. denied.* "This rule does not authorize the exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party that is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause." Evid. R. 615.

In the case at bar, the State requested the separation of witnesses on the first day of trial after eliciting testimony from several witnesses. Julian objected to the State's request, arguing that the State should have requested the separation prior to trial. The trial court overruled Julian's objection and ordered a separation of witnesses. The State then called Detective Hanna for the first time to testify only as to the discovery of red fibers on a security gate inside the school. Detective Hanna's testimony tied into the testimony of one of the State's expert witnesses, Trace Evidence Analyst Damon Lettich of the Indiana State Police Crime Laboratory, who was waiting to testify regarding his analysis of the red fibers.

■ Pursuant to exception (2) of Rule 615, Detective Hanna remained in the courtroom as the State's representative subsequent to his initial testimony. The record shows that the State called Detective Hanna to testify a second time appar-

---

1. In his Appellant's Brief, Julian seems to challenge the sufficiency of his arson conviction tangentially to his Evid. R. 704(b) argument. However, this argument is undeveloped and not in conformance to Ind. Ap-

pellate Rule 46(A)(8)(a) regarding citation to authority and cogent argument. Accordingly, if it was Julian's intent to raise a sufficiency issue on appeal, we find it waived. *See* App. R. 46(A)(8)(a).

ently to familiarize the jury with the layout of the school through the submission of a diagram of the school and photographic evidence depicting the school after the fire. Julian made no objections to the State's calling Detective Hanna to testify a second time during the trial. In addition, the State noted at the end of its direct examination of Detective Hanna that he "was subject to possible recall during the trial." (Tr. p. 173). Julian made no objection to this condition or to the trial court's response of "[p]ermission granted." (Tr. p. 173).

Detective Hanna was recalled to the witness stand for the third and final time by the State to discuss how he originally came into contact with two other witnesses who testified previously. Once again, Julian made no objection either to the State recalling Detective Hanna or to the State's direct examination of him.

First, we find no error in the trial court's allowing the State to recall Detective Hanna after ordering the separation of witnesses. Moreover, Julian's contention is deficient in that he fails to enlighten us in what way Detective Hanna's testimony was influenced by that of other witnesses whose testimony he heard. *See Fourthman*, 658 N.E.2d at 90. In addition, Julian's failure to object at trial to the State recalling Detective Hanna to testify waives any possible error on appeal. *See Grace v. State*, 731 N.E.2d 442, 444 (Ind.2000), *reh'g. denied; see also Ingram v. State*, 547 N.E.2d 823, 829 (Ind.1989).

Nonetheless, Julian argues that his failure to object at trial was "natural," as there "appears to be no case law or statutory law on this issue." (Appellant's Br. 37). Needless to say, we must point out that sometimes an error is without precedent in law simply because it is not error. Such is the case here.

### IV. *Sentence*

#### A. Standard of Review

■ Lastly, Julian asserts that he was improperly sentenced. When considering the appropriateness of the sentence for the crime committed, trial courts should initially focus upon the presumptive sentence. *Rodriguez v. State*, 785 N.E.2d 1169, 1179 (Ind.Ct.App.2003), *trans. denied.* The trial court then balances aggravating and mitigating circumstances and is solely responsible for determining the weight to accord each of these factors in deciding whether to deviate from the presumptive sentence. *Flammer v. State*, 786 N.E.2d 293, 296 (Ind.Ct.App.2003), *trans. denied.* A sentence enhancement will be affirmed, if after due consideration of the trial court's decision, this court finds that the sentence was appropriate in light of the nature of the offense and the character of the offender. *See* Ind. Appellate Rule 7(B); *see also Rodriguez*, 785 N.E.2d at 1174.

#### B. Balancing of Aggravating and Mitigating Factors

■ The crimes of which Julian was convicted carried the following possible sentences: for Count I, arson, a Class B felony, "[a] person who commits a Class B felony shall be imprisoned for a fixed term of ten (10) years, with not more than ten (10) years added for aggravating circumstances or not more than four (4) years subtracted for mitigating circumstances"; for Count II, burglary, a Class C felony, "[a] person who commits a Class C felony shall be imprisoned for a fixed term of four (4) years, with not more than four (4) years added for aggravating circumstances or not more than two (2) years subtracted for mitigating circumstances"; and for Count III, attempted theft, a Class D felony, "[a] person who commits a Class D felony shall be imprisoned for a fixed term

of one and one-half years, with not more than one and one-half years added for aggravating circumstances or not more than one year subtracted for mitigating circumstances." I.C. §§ 35–50–2–5; 35–50–2–6; and 35–50–2–7.

In support of its sentence, the trial court found multiple aggravating factors, including: (1) Julian's prior criminal history as a juvenile; (2) that earlier attempts to rehabilitate Julian have been unsuccessful; (3) the economical and logistic impact on the community of Frankton; and (4) that Julian failed to seek help to mitigate damages once the fire was started. The trial court specifically declined to accept Julian's proposed mitigating factors. As a result, the trial court sentenced Julian to an enhanced sentence of eighteen years on Count I, which is the presumptive ten years plus eight years for aggravating circumstances, and suspended three of those years to probation for an executed sentence of fifteen years for the arson conviction. The trial court then sentenced Julian to the presumptive sentence plus two years for a total of six years executed on Count II, and ordered the sentence for Count II to run concurrent with that of Count I. Julian also received the maximum sentence of three years for Count III; the trial court also ordered the sentence for Count III with run concurrent to that of Count I. Thus, Julian received an aggregate, executed sentence of fifteen years in the Department of Correction.

Julian argues that the trial court failed to consider his proffered mitigating circumstances. Julian maintains that this

failure results in his sentence being inappropriate.[2] We disagree.

During the sentencing hearing, defense counsel asserted to the trial court that Julian's only felony conviction occurred while he was a juvenile. Defense counsel then argued that the trial court should consider the following as mitigating factors: (1) Julian's work history; and (2) his good character; Julian also directed the trial court's attention to two statutory considerations pursuant to I.C. § 35–38–1–7.1(c) that the trial court may determine are mitigating factors: (1) Julian is likely to respond affirmatively to probation or short term imprisonment; and (2) Julian's character and attitude indicate that he is unlikely to commit another crime.

However, it is the sole discretion of the trial court to determine the weight accorded any aggravating or mitigating factors. *Simms v. State*, 791 N.E.2d 225, 233 (Ind.Ct.App.2003). When a defendant alleges that the trial court failed to identify or find a mitigating factor during sentencing, the defendant must establish that the mitigating evidence is both significant and clearly supported by the record. *Firestone v. State*, 774 N.E.2d 109, 114 (Ind.Ct.App.2002). Trial courts are not required to include within a sentencing statement that it considered all proffered mitigating circumstances, only those that are significant. *Id.* at 115.

Here, the trial court specifically considered the proffered mitigating circumstances in its sentencing statement as follows:

2. In his Appellant's Brief, Julian actually argues that his sentence is "manifestly unreasonable." (Appellant's Br. p. 33). However, he correctly notes that this court reviews sentencing decisions under App. R. 7(B), which provides, "[t]he Court may revise a sentence authorized by statute if, after due consider-ation of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Accordingly, we have restated Julian's issue in the correct format by substituting "inappropriate" for "manifestly unreasonable."

[Julian] had several exposures to the [j]uvenile court system and was anointed with the opportunity of changing his behavior and his lifestyle through several programs and rehabilitation programs that they offered and it would appear that those failed because of [Julian's] subsequent and malevolent behavior and resulting in this incident of the fire at the Frankton High School. Therefore, the [c]ourt finds that [this] particular aggravating circumstance would overrule the proposed mitigating circumstances ... because despite the fact he was given several opportunities to rehabilitate, he never did and so he's proven that that mitigator wouldn't ... is not a valid mitigator in this case.

(Tr.pp. 618–9). Thus, the trial court properly considered the proffered mitigating factors and decided against accepting them. *See Firestone,* 774 N.E.2d at 115. Accordingly, we find no abuse of discretion in the trial court's balancing of the aggravating and mitigating factors. *Davies v. State,* 758 N.E.2d 981, 987 (Ind.Ct.App. 2001), *trans. denied.*

 Nevertheless, Julian contends that his sentence was inappropriately enhanced. In addition to reviewing the traditional balancing of aggravating and mitigating circumstances, we review the sentence to determine whether it is appropriate considering the "nature of the offense" and the "character of the offender." *See* App. R. 7(B); *Rodriguez,* 785 N.E.2d at 1174. In considering the "nature of the offense," the maximum enhancement permitted by law should be reserved for the very worst offenses and offenders. *See Borton v. State,* 759 N.E.2d 641, 648 (Ind.Ct.App.2001), *trans. denied.* At sentencing, the trial court found, once the fire was begun, Julian and his two accomplices "fled the scene as quickly as they could to absolve them-

selves of any responsibility." (Tr. p. 620). The result was approximately $1.4 million in damage to the high school both in structural damage and in relocating more than one thousand students during the school year to other schools to continue their education. These facts justify the trial court's imposition of an enhanced sentence in light of the nature of the offense. *See* App. R. 7(B); *Rodriguez,* 785 N.E.2d at 1174.

 When reviewing whether a defendant was properly sentenced, we also review the sentence to assure that it is proportionate to the "character of the offender." *Borton,* 759 N.E.2d at 648. The record reflects that Julian had a criminal history as a juvenile and, thus far, seems to have resisted any efforts to modify his criminal behavior. Evidence presented at trial showed that Julian participated in a marijuana deal in the school parking lot shortly before the arson occurred, and Detective Hanna testified that, when he questioned Julian during his investigation there was a distinct smell of marijuana about his person. Moreover, although Julian received enhanced sentences on all three charges, the trial court ordered the sentences to run concurrent with Count I; therefore, his aggregate executed sentence was far from the maximum sentence he could have received. Thus, we find that the facts justify the trial court's imposition of an enhanced sentence in light of the character of the offender. *See* App. R. 7(B). Consequently, after due consideration of the trial court's sentencing decision, we find that Julian's sentence was not inappropriate in light of the nature of the offense and the character of the offender. *See* App. R. 7(B); *see Rodriguez,* 785 N.E.2d at 1174.

## CONCLUSION

Based on the foregoing, we conclude: (1) that any error committed by the trial court

in allowing the State to impeach its own witness was harmless; (2) the trial court committed no error in allowing State's witness Murray to testify that the fire in the school was intentionally set; (3) the trial court did not violate its separation of witnesses order by permitting the State to recall its representative, Detective Hanna, to testify on two occasions after hearing the testimony of other witnesses; and (4) the trial court properly sentenced Julian.

Affirmed.

KIRSCH, C.J., and NAJAM, J., concur.