**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 25 2013, 6:15 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARY SPEARS**
Kammen Maryan & Moudy
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| CLARISSA BREWER, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 49A05-1212-CR-633 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kimberly J. Brown, Judge
Cause No. 49G16-1204-FD-27886

**July 25, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Clarissa Brewer (Brewer), appeals her conviction for Counts I and II, neglect of a dependent, Class D felonies, Ind. Code § 35-46-1-4.

We affirm in part, reverse in part, and remand with instructions.

## ISSUES

Brewer raises eight issues for our review, which we consolidate and restate as the following six issues:

(1) Whether the trial court abused its discretion by limiting Brewer from questioning the venire and denying her for cause challenges;

(2) Whether the trial court abused its discretion by admitting witness testimony, photographic evidence, and opinion testimony;

(3) Whether the trial court abused its discretion by permitting the State's witnesses to testify after an alleged separation order violation;

(4) Whether the State established beyond a reasonable doubt that Brewer committed neglect of a dependent;

(5) Whether the trial court abused its discretion by rejecting Brewer's proposed jury instruction; and

(6) Whether the trial court abused its discretion by sentencing Brewer.

## FACTS AND PROCEDURAL HISTORY

Brewer and her brother lived in a two-floor apartment in Indianapolis along with Brewer's two children, three-month-old H.B., and sixteen-month-old A.D. On the

morning of April 26, 2012, the children were in their bedroom asleep in separate playpens. Brewer along with Bruce Daniels (Daniels), the children's father who was visiting from South Carolina, left the children alone in the apartment to go to a Wal-Mart store, located approximately one mile away from the apartment. The walk to Wal-Mart was approximately fifteen minutes each way, but Brewer had estimated that the trip would take "no more than twenty minutes." (Transcript p. 235). H.B. was in an elevated section of his playpen with a Boppy pillow around his head and a blanket. A.D., who had just started to walk, was asleep in her playpen, which was within three feet of a window and blinds.

Later that morning, Lisa Comei (Comei), a manager at Brewer's apartment complex along with Andrew McMullan (McMullan) and his co-worker, inspection company employees, arrived at Brewer's apartment to conduct routine inspection and maintenance of which residents had received prior notice. Comei opened the door of Brewer's apartment and was overcome by the smell of dirty diapers. McMullan saw that the apartment was dark, messy, and smelled of trash and urine. As McMullan began his work downstairs, Comei and the other inspector searched for the source of the smell. Comei opened a bedroom door and found H.B. and A.D. in their playpens. Dirty diapers were on the bedroom floor and the smell was overpowering, causing Comei to dry heave. Comei quickly shut the door and A.D. began crying. McMullan came up to the room and found the smell overpowering. McMullan entered the room and picked up A.D. who was standing up and screaming. McMullan handed A.D. to Comei and A.D. calmed down.

3

McMullan also saw H.B. "[lying] on his back" in a "horseshoe shaped pillow" known as a "Boppy" pillow. (Tr. p. 113). McMullan saw that H.B.'s head was "[i]n the middle of [the] horseshoe." (Tr. p. 113). After no adult was found in the apartment, Comei called the Cumberland Police Department.

Officer James Riddle of the Cumberland Police Department (Officer Riddle) responded to the call and arrived at Brewer's apartment. Officer Riddle entered the bedroom, detected a very bad odor, and found H.B. awake. A few minutes later, Officer Suzanne Woodland (Officer Woodland) arrived, but could not retrieve H.B. because of the odor. Eventually, McMullan entered the bedroom and picked up H.B. whose soiled clothes had adhered to the bedding. Officer Riddle contacted the Department of Child Services (DCS).

Brewer and Daniels returned to the apartment with grocery bags, some thirty minutes after Officer Riddle had been dispatched. Brewer told Officer Riddle that she resided in the apartment and had left around 9 a.m. DCS family case manager Eric Woods (FCM Woods) arrived and began his investigation. FCM Woods saw the Boppy pillow, the playpens and the window and blinds nearby. He noticed electrical outlets in the apartment, an open toilet, and chemicals left in the bathroom. In a second upstairs bedroom, FCM Woods found plastic trash bags and a cigarette butt. A double stroller and a shopping cart were also found in the apartment.

That same day, the State filed an Information charging Brewer with two Counts of neglect of a dependent, Class D felonies, I.C. § 35-46-1-4(a). On October 11, 2012, a

4

jury trial was held. Both sides were given fifteen minutes to question potential jurors. Brewer asked potential jurors whether they could distinguish between actual dangers and hypothetical ones. Just as one potential juror, later identified as Mr. Whitaker (Whitaker), responded that "just because the law says I can go down the street for ten minutes," the trial court informed Brewer's counsel that time was up and asked if the State would pass for cause, which it did. (Tr. p. 53). Brewer's counsel argued that Whitaker was biased. The trial court refused to excuse Whitaker for cause, but permitted one minute of additional questioning. Brewer's counsel asked, "[i]f I tell you it has to be actual would you be able to abide by that?" and Whitaker replied, "[p]robably not." (Tr. p. 55). Brewer's counsel then asked the entire panel, "[d]oes anyone else agree with that?" but the trial court announced that time was up. (Tr. p. 55). Brewer's counsel requested time for additional questioning, alleging that three additional potential jurors "just said they agree" with Whitaker. (Tr. p. 56). In denying the request, the trial court pointed out that Whitaker's response was a result of the way Brewer's counsel posed the question and refused to remove potential jurors for cause. Thereafter, Brewer made peremptory challenges to two of the four jurors. After the jury was sworn, however, Brewer's counsel indicated on the record that she had exhausted her peremptory challenges.

Subsequently, the trial court issued a separation order, instructing the parties to inform their witnesses. Following a recess, Brewer informed the trial court that the State's witnesses were in a group discussing their testimony and moved for a mistrial.

5

Although the State admitted that questions about a picture were asked, it argued that while witnesses may not discuss their testimony, they can discuss the facts of the case. Brewer responded that even though no misconduct occurred, the witnesses were "basically agreeing on what set of facts." (Tr. 68). The trial court denied Brewer's motion for a mistrial.

Beginning with Comei, the State's witnesses testified about the condition of the apartment. McMullan and FCM Woods testified about infant sleep safety. FCM Woods also testified about whether an infant can escape from a playpen. At the close of evidence, Brewer tendered a proposed instruction on actual and appreciable injury, which the trial court rejected and instead issued its instructions to the jury. Brewer was found guilty as charged.

On November 27, 2012, a sentencing hearing was held. The trial court sentenced Brewer to concurrent sentences of 545 days on each Count with all but four days suspended to probation. After assessing fines and costs, the trial court ordered the probation department to determine whether Brewer was indigent. In the event that she was, the trial court ordered Brewer to complete community service to pay for the costs and fines.

Brewer now appeals. Additional facts will be provided as necessary.

<u>DISCUSSION AND DECISION</u>

I. *Sufficiency*

Brewer first argues that there is insufficient evidence to support her conviction beyond a reasonable doubt. In reviewing a challenge to the sufficiency of the evidence, this court neither reweighs the evidence nor judges the credibility of witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). Rather, we will consider only the evidence that is favorable to the verdict and the reasonable inferences to be drawn therefrom. *Id*. If there is substantial evidence of probative value to support the conviction, it will not be set aside. *Jones v. State*, 783 N.E.2d 1132, 1139 (Ind. 2003).

Indiana Code section 35-46-1-4(a) provides, in relevant part, that a person having the care of a dependent who knowingly or intentionally places the dependent in a situation that endangers the dependent's life or health commits neglect of a dependent as a Class D felony. Here, the information alleged that Brewer knowingly placed her children in a situation that endangered their life or health, by leaving them unsupervised.

Brewer first argues that the State failed to prove that she knowingly left her children in danger. A person engages in conduct knowingly if, "when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35-41-2-2(b). Under the child neglect statute, a "knowing" *mens rea* requires a subjective awareness of a "high probability" that a dependent has been placed in a dangerous situation. *Villagrana v. State*, 954 N.E.2d 466, 468 (Ind. Ct. App. 2011). Because, in most cases, such a finding requires the fact finder to infer the defendant's mental state, this court must look to all the surrounding circumstances of a case to determine if a guilty verdict is proper. *Id*.

Here, the State presented evidence that Brewer left her infant children alone in a closed and smelly room while she and Daniels went on a thirty minute journey on foot to Wal-Mart. Brewer admitted to doing so and that it was a "stupid decision." (Tr. p. 254). This admission supports the jury's conclusion that Brewer knowingly placed her children in a situation that endangered their life or health by leaving them unsupervised.

Brewer also argues that the State failed to establish that the children were in actual and appreciable danger. Instead, she contends that the State's proof sufficed only to show hypothetical harm to the children. In essence, Brewer argues that as no harm befell her children while she and Daniels went shopping, no actual and appreciable danger existed. In rejecting a similar argument, this court stated in *Johnson v. State*, 555 N.E.2d 1362, 1366 (Ind. Ct. App. 1990):

> To accept Johnson's argument would require us to conclude that the legislature intended to engage in a roulette game whereby conduct or inaction with respect to the care of a child, albeit heedless or neglectful, could continue unchecked so long as it did not happen to harm the child. This we will not do.

Here, Brewer abandoned two infants, leaving them helpless until her return from Wal-Mart. The children were left in their bedroom that had electrical outlets and cords. H.B. was left in his playpen, resting on a pillow and covered by a blanket. A.D., who could stand and walk, was left in her playpen close to a window with blinds and cords. That one or a multitude of hypothetical mishaps could have occurred misses the point. "Danger is the state of being exposed to harm. To endanger is to bring into danger." *State v. Downey*, 476 N.E.2d 121, 123 (Ind. 1985), *reh'g denied*. The actual and

8

appreciable danger here stems from the children's infancy and the inherent inability to respond to whatever harm may befall them. *See White v. State*, 547 N.E.2d 831, 836 (Ind. 1989). Thus, by leaving the infant children unsupervised, Brewer placed them in actual and appreciable danger. Accordingly, we affirm Brewer's convictions for neglect of dependents.

## II. *Admission of Evidence*

Next, Brewer argues that the trial court abused its discretion by admitting evidence regarding the condition of her apartment as well as opinion testimony from McMullan and FCM Woods regarding the safety of the Boppy pillow in which H.B. was found sleeping and whether the children could escape from their playpens. She argues that such evidence was either irrelevant, prejudicial, or constituted impermissible opinion testimony.

A trial court possesses broad discretion in ruling on the admissibility of evidence. *Julian v. State*, 811 N.E.2d 392, 398 (Ind. Ct. App. 2004), *trans. denied*. Pursuant to Ind. Evidence Rule 401, evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Id*. "All relevant evidence is admissible," except as provided by statute or rule; "[e]vidence which is not relevant is not admissible." Evid.R. 402. Pursuant to Evid.R. 403, the trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue

9

delay, or needless presentation of cumulative evidence. *Julian*, 811 N.E.2d at 398-99. *Id*. The trial court has wide latitude in weighing the probative value of evidence against the potentially prejudicial effects of its admission. *Id*.

### A. *Condition of the Apartment*

Brewer first challenges the admission of witness testimony regarding the smell of her apartment. Four witnesses testified to the odor of Brewer's apartment: Comei, McMullan, Officer Riddle, and Officer Woodland. Each witness, with varying intensity, described the odor and their reactions thereto. For example, Comei said that she had "never smelled anything that bad;" McMullan described it as "a mixture of trash and urine;" Officer Riddle said "[i]t smelled like boiling urine on the stove;" Officer Woodland described it as a "very foul stench" that caused her to gag. (Tr. pp. 106, 110, 152, 175). Brewer failed to object to these responses.

The failure to make a contemporaneous objection to the admission of evidence at trial results in waiver of the error upon appeal. *Jackson v. State*, 735 N.E.2d 1146, 1152 (Ind. 2000). Thus, Brewer's failure to object precludes appellate review unless its admission constitutes fundamental error. *See id*. Here, Brewer does not allege fundamental error, "an error so prejudicial to the rights of the defendant as to make a fair trial impossible." *Id*. at 27 n.1. Accordingly, we decline to review Brewer's challenge to the admissibility of the odor evidence.

Brewer also challenges the admission of various photographs depicting the condition of her apartment. At trial, the State moved to admit Exhibits 2-8 and 14-19,

10

depicting the entry way of the apartment, the stairs connecting the first and second floors of Brewer's apartment, the downstairs living room, containing video cords, the upstairs bathroom, containing a cigarette butt and debris; and the upstairs bedroom adjacent to the children's bedroom, which had trash and other debris scattered about the floor. Brewer contends that these photographs were irrelevant and prejudicial.

Here, the photographs depict areas separate from the children's bedroom. Although the State presented evidence establishing the conditions of the living room, bathroom, and the downstairs, there is no evidence that the children left their bedroom. However, even if these photographs were irrelevant and prejudicial, we conclude that the admission of this evidence was harmless. The improper admission of evidence is harmless error when the conviction is supported by such substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction. *Lafayette v. State*, 917 N.E.2d 660, 666 (Ind. 2009). While the photographs depict a cluttered apartment, we do not find them to be exceptional. Moreover, the likelihood that these photographs contributed to the jury verdict is minimal; the State presented separate photographs depicting the children's bedroom and playpens. We therefore do not find a substantial likelihood that the evidence contributed to Brewer's conviction.

### B. *Opinion Testimony*

Brewer also contends that the trial court abused its discretion by allowing certain testimony from McMullan and FCM Woods. Both witnesses testified about safe sleeping

11

conditions for an infant and FCM Woods also testified on the ability of an infant to escape from her playpen. Brewer argues that their testimony should have been excluded because both offered improper layperson opinions and neither qualified as an expert or a skilled witness. The State argues that the trial court properly admitted their testimonies pursuant to the skilled witness rule under Evid.R. 701.

A "skilled witness" is a person with a degree of knowledge short of that sufficient to be declared an expert under Evid.R. 702, but somewhat beyond that possessed by the ordinary jurors. *Linton v. Davis*, 887 N.E.2d 960, 975 (Ind. Ct. App. 2007), *trans. denied*. Skilled witnesses not only can testify about their observations, they can also testify to opinions or inferences that are based solely on facts within their own personal knowledge. *Id*. In order to be admissible under Evid.R. 701, opinion testimony of a skilled witness or lay observer must be "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." *Id*.

McMullan observed H.B. with his head propped up by and sleeping in the Boppy pillow and explained that "when they're that small, if their [sic] unable to rollover on their own, they can suffocate on it. So, their [sic] . . . you're not supposed to, you're not supposed to leave them unattended with a pillow." (Tr. p. 113). McMullan is an office worker for an inspection company; the purported ground for his qualification to testify as a skilled witness was based on him being a parent with a six week old child. We do not

12

agree with the State that McMullan possessed a degree of knowledge to qualify him as a skilled witness.

Nevertheless, we find no error because McMullan's opinion qualified as permissible lay opinion testimony under Evid.R. 701. Lay opinion testimony is permissible when based on the witnesses' personal observations and is helpful to a clear understanding of their testimony. *See id.* Here, McMullan opined that a three month old can suffocate on a pillow based upon the child's inability to move. This opinion was helpful to understand his testimony on the position of the child. *See Tolliver v. State*, 922 N.E.2d 1272, 1279 (Ind. Ct. App. 2010), *trans. denied*. Furthermore, even if McMullan's lay opinion testimony was impermissible, its admission was harmless. Error is harmless if the conviction is supported by substantial independent evidence of guilt such that there is no substantial likelihood that the questioned evidence contributed to the conviction. *See id.* Here, Brewer's admission that she left the children unattended and other witnesses' testimony about discovering the children was sufficient to support Brewer's conviction, even without McMullan's disputed testimony.

Brewer also objected to FCM Woods' testimony that it was unsafe to allow H.B. to sleep in the Boppy pillow and that A.D. could have escaped from her playpen. The State sought to offer FCM Woods' opinion as a skilled witness under Evid.R. 701. Brewer contends FCM Woods' opinions are impermissible since FCM Woods did not see H.B. and A.D. in their playpens nor possessed the necessary qualifications in child sleeping or materials construction. However, FCM Woods testified that he possessed

13

training about "safe sleep when it comes to infants, and especially children three months old, sleeping in cribs with materials in the bed and that is an unsafe environment for a child to be sleeping." (Tr. pp. 191-92). FCM Woods personally observed H.B.'s crib as well as the blanket and pillows left inside. As a result, FCM Woods deemed H.B.'s sleeping condition unsafe because "if a blanket, a pillow, or something covers their face or mouth, they're not able to move that obstruction." (Tr. p. 192) FCM Woods also gave his opinion on whether A.D. could escape from her playpen. FCM Woods testified that he observed A.D.'s playpen and offered his opinion that a toddler could get out of that crib "based upon [his] training and [his] experience of toddlers." (Tr. p. 195). We conclude that FCM Woods' opinion suffices under Evid.R. 701 and the trial court did not abuse its discretion.

### III. *Jury Selection*

Next, Brewer asserts that the trial court abused its discretion by refusing to grant additional time to question those veniremen who Brewer claims demonstrated that they would not follow the law and by denying Brewer's challenge for cause as to those veniremen. The State argues that Brewer did not ask for additional time and that Brewer has waived her argument that the trial court erred by not excusing jurors for cause.

"Although trial courts have broad discretionary power in regulating the form and substance of voir dire … the conduct of voir dire examinations is now governed by Indiana Trial Rule 47(D)." *Cliver v. State*, 666 N.E.2d 59, 65 (Ind. 1996). T.R. 47(D)

14

permits the trial court to "impose an advance time limitation" on voir dire. However, the trial court:

> shall liberally grant additional reasonable time upon a showing of good cause related to the following: the nature of the case, the quantity of prospective jurors examined and juror vacancies remaining, and the manner and content of the inquiries and responses given by the prospective jurors.

T.R. 47(D). The decision of the trial court will be reversed upon appeal only if there is a showing of a manifest abuse of discretion and a denial of a fair trial. *Cliver*, 666 N.E.2d at 65. This will usually require a showing by the defendant that he was in some way prejudiced by the voir dire. *Id*.

Here, the trial court limited voir dire to fifteen minutes. Brewer questioned the venire by soliciting their views on hypothetical dangers. Brewer asked Whitaker whether he would "be able to abide by the law." (Tr. p. 53). Whitaker responded that "just because the law says I can go down the street for ten minutes, or whatever no." (Tr. p. 53). After the trial court called time, Brewer's counsel requested an additional minute to question Whitaker because he "was starting to say that he thought the law was wrong." (Tr. p. 54). The trial court granted Brewer an additional minute to continue pursuing her line of inquiry, yet Brewer's counsel continued to ask about hypothetical and actual dangers. Given that the trial court granted Brewer additional time and Brewer does not argue on appeal that the trial court's denial rendered a fair trial impossible, we find no abuse of discretion. *See Rutledge v. State*, 525 N.E.2d 326, 328 (Ind. 1988).

Next, Brewer argues that her right to a fair and impartial jury was compromised because the trial court denied her for cause challenges to the venire. The trial court has

discretion to grant or deny challenges for cause. *Weinberger v. Boyer*, 956 N.E.2d 1095, 1103 (Ind. Ct. App. 2011), *trans. denied*. We will sustain the decision on appeal unless it is illogical or arbitrary. *Id.* However, when a juror serves who should have been removed for cause, the complaining party is entitled to a new trial, absent waiver. *Id.*

"[T]o preserve any error the defendant bears the burden of demonstrating that at the time she challenged the jurors for cause, she had exhausted her peremptory challenges." *Robinson v. State*, 453 N.E.2d 280, 282 (Ind. 1983). The rationale for this approach is that "where a trial court may have erred in denying a party's challenge for cause, and the party can cure such error by peremptorily removing the apparently biased venire person, the party should do so in order to ensure a fair trial and an efficient resolution of the case." *Id.* To obtain appellate review of trial court error for denying challenges for cause, a defendant:

> must use any available peremptories to correct erroneous denials of challenges for cause. If on appeal you then prove both the erroneous denial and that you were unable to strike another objectionable juror because you exhausted your peremptories, you are entitled to a new trial, full stop.

*Merritt v. Evansville-Vanderburgh School Corp.*, 765 N.E.2d 1232, 1237 (Ind. 2002).

The exhaustion requirement is fatal to Brewer's claim. Prior to voir dire, the trial court gave each side "five [peremptory] challenges." (Tr. p. 20). After Brewer received additional time to question Whitaker, she suggested that not only could Whitaker not abide by the law, but three other jurors also indicated they could not. The trial court denied Brewer's challenge for cause and thereafter each side exercised its peremptory challenges. Although Brewer peremptorily struck two of the four jurors she perceived to

16

be biased, she could have removed the other two by exercising two of her three remaining peremptory challenges. She did not do so, and therefore her claim is waived. *See Weinberger*, 956 N.E.2d at 1104.

### IV. *Jury Instructions*

Brewer contends that the trial court committed reversible error by rejecting her proposed instruction on actual and appreciable danger. The State argues that Brewer's proposed instruction was covered by the trial court instructions. Instructing the jury is within the sole discretion of the trial court. *VanWanzeele v. State*, 910 N.E.2d 240, 246 (Ind. Ct. App. 2009), *trans. denied*. As such, we will reverse a trial court's decision regarding jury instructions only for an abuse of discretion. *Id*. Before a defendant is entitled to a reversal, she must affirmatively show that the instructional error prejudiced her substantial rights. *Glenn v. State*, 884 N.E.2d 347, 357 (Ind. Ct. App. 2008), *trans. denied*. Jury instructions serve to inform the jury of the law applicable to the facts presented at trial, enabling it to comprehend the case sufficiently to arrive at a just and correct verdict. *Hamilton v. Hamilton*, 858 N.E.2d 1032, 1035 (Ind. Ct. App. 2006), *reh'g denied*, *trans. denied*. In evaluating the propriety of a given instruction, we consider: (1) whether the instruction correctly states the law, (2) whether there is evidence in the record supporting the instruction, and (3) whether the substance of the instruction is covered by other instructions. *Id*.

Brewer offered a proposed jury instruction stating:

The neglect of a dependent statute is to be regarded as applying to situations that endanger the life or health of a dependent. The placement

17

must itself expose the dependent to a danger which is actual and appreciable.

(Appellant's App. p. 50). The trial court's instruction provided in relevant part:

Before you may convict the Defendant, the State must have proved each of the following beyond a reasonable doubt:

1.    The Defendant, [Brewer]
2.    knowingly or intentionally
3.    placed H.B., and A.D., in a situation that actually and appreciably endangered H.B., and A.D.'s life or health, that is: left [her] children unsupervised.
4.    when H.B., and A.D. were dependent and when [Brewer] had the care, custody, or control of H.B. and A.D., whether assumed voluntarily or because of a legal obligation.

(Appellant's App. p. 85).

We conclude that Brewer's proposed instruction was covered by the trial court's instruction. Brewer now argues that her proposed instruction comes from *State v. Downey*, 476 N.E.2d 121, 123 (Ind. 1985), *reh'g denied*, where our supreme court addressed constitutional infirmities of the prior version of the neglect statute by instructing that the danger must be "actual and appreciable." However, the trial court is not bound to give an instruction, although it may be a correct statement of the law and applicable to the evidence, if the substance thereof is covered by other instructions which are given. *Cobb v. State*, 412 N.E.2d 728, 741 (Ind. 1980). Accordingly, the trial court did not err in refusing to tender Brewer's proposed jury instruction.

## V. *Witness Separation*

Brewer argues that the trial court abused its discretion by permitting the State to call its witnesses in violation of the trial court's separation order. Brewer alleges that

several of the State's witnesses discussed the case with a prosecutor and among each other prior to testifying. Indiana Evid. Rule 615, "Separation of Witnesses," provides for the exclusion of witnesses "so that they cannot hear the testimony of or discuss testimony with other witnesses."

> The purpose of a witness separation order is to prevent the testimony of one witness from influencing another. In the absence of connivance or collusion by the prosecutor, the court has discretion in allowing a witness to testify after the violation of a separation order. We will not disturb that exercise of discretion unless there is a showing of prejudice tantamount to an abuse of discretion.

*Corley v. State*, 663 N.E.2d 175, (Ind. Ct. App. 1996) (citations omitted).

The trial court granted Brewer's motion for separation of witnesses following voir dire. During a recess and prior to the State's case-in-chief, Brewer's counsel overheard the State discussing features of Brewer's apartment with police officer witnesses as well as other State's witnesses discussing "what [Brewer's] refrigerator looked like." (Tr. p. 67). However, "[t]he primary reason for a separation of witnesses order is to prevent witnesses from gaining knowledge of questions actually posed to, and answers actually given, by prior witnesses, and adjusting their own testimony as a result thereof." *Clark v. State*, 480 N.E.2d 555, 558 (Ind. 1985). Here, any discussion between the State's witnesses occurred prior to their testimony. As a result, we conclude that no abuse of discretion occurred.

## VI. *Sentencing*

Finally, Brewer challenges the imposition of community service in lieu of costs and fines. In addition to sentencing Brewer to probation, the trial court imposed sixteen

hours of community service as well as costs and fines amounting to $316. However, the record reflects that the trial court imposed additional community service in lieu of fines and costs in the event that the probation department concluded that Brewer was indigent. The State agrees that the trial court erred; however, it argues only that the trial court improperly delegated the determination of Brewer's indigency to the probation department.

In *Vaughn v. State*, 982 N.E.2d 1071, 1076 (Ind. Ct. App. 2013), we reversed the trial court's imposition of community service in lieu of costs and fines. We reasoned that the trial court's ability to impose community service in lieu of costs and fines depended upon statutory authority to do so. *Id*. at 1075. Lacking such authority, the trial court could not impose community service in lieu of fees. *Id*. at 1076. The same result follows here. The trial court was without statutory authority to order Brewer to perform community service in the event of indigency. Furthermore, I.C. § 33-34-2-3 vests determination of a defendant's indigency with the trial court, requiring it to hold an indigency hearing before determining whether and how to impose costs. Here, the trial court delegated the determination of Brewer's indigency. We therefore reverse and remand for the trial court to address the imposition of fines and costs and Brewer's indigency.

## CONCLUSION

Based upon the foregoing, we conclude that (1) the trial court did not abuse its discretion by limiting Brewer from questioning the venire and denying her for cause

challenges; (2) Brewer waived her challenge to testimony regarding the apartment's odor; the admission of photographs depicting the apartment outside the children's bedroom amounted to harmless error; and opinion testimony regarding infant sleep safety and A.D.'s playpen was admissible; (3) the trial court did not abuse its discretion by permitting the State's witnesses to testify following a separation order; (4) the State established beyond a reasonable doubt that Brewer committed neglect of a dependent; and (5) the trial court did not abuse its discretion by rejecting Brewer's jury instruction. However, we conclude that the trial court abused its discretion by imposing community service in lieu of fines and costs and by improperly delegating Brewer's ability to pay fines and costs to the probation department.

Affirmed in part, reversed in part, and remanded with instructions.

BRADFORD, J. and BROWN, J. concur