Thomas DEXTER, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 79A05–1003–CR–189.

Court of Appeals of Indiana.

March 31, 2011.

Transfer Granted June 22, 2011.

Bruce W. Graham, Graham Law Firm, P.C., Lafayette, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Thomas Dexter was convicted after a jury trial of Class A felony neglect of a dependent [1] and found to be an habitual offender.[2] He argues on appeal the trial court abused its discretion by permitting an expert to express an opinion concerning Dexter's guilt, it abused its discretion by rejecting jury instructions on negligent

---

1. Ind.Code § 35–46–1–4.

2. Ind.Code § 35–50–2–8.

conduct, and the evidence is insufficient to support the conviction and the habitual offender finding. We affirm.

## FACTS AND PROCEDURAL HISTORY[3]

■ In April of 2009, Dexter was living with A.H. and her three children. A.H. left the children in Dexter's care while she worked. On April 30, police responded to a 911 call from the apartment where Dexter and A.H. lived. When an officer arrived, A.H.'s three-year-old daughter was unresponsive and had labored breathing. Dexter reported he had left the child in the bathtub while he checked the laundry, and when he returned she was partially submerged.

A doctor who examined the child at the emergency room believed she had suffered head trauma and her condition was not likely the result of drowning. A second doctor concluded the child suffered brain injury from "abusive head trauma." (Tr. at 369.) Two days after the incident, Dexter told A.H. he had been playing with the child and tossing her in the air, but he missed catching her and she hit her head on the bathtub. During a second police interview, Dexter told police the child hit her head when he was tossing her in the air and missed catching her.

The child died on May 5. An autopsy indicated the death was a homicide and was caused by "intracranial hemorrhage due to blunt force trauma to the head."

(*Id.* at 467.) The State charged Dexter with felony neglect of a dependent and alleged he was an habitual offender.

At trial, Dexter offered instructions to the effect he could not be convicted if his acts were merely negligent. The trial court declined to so instruct the jury. A doctor testified the child received "abusive head trauma." (*Id.* at 368.) The jury found Dexter guilty of neglect of a dependent. In the habitual offender phase of the trial the State offered, as proof of one of Dexter's prior convictions, a document that purported to be an order accepting Dexter's plea agreement and sentencing him, but that order was not signed by a judge. The jury found Dexter was an habitual offender.

## DISCUSSION AND DECISION

### 1. *Expert Testimony*

■ The State elicited testimony by a physician that the child experienced "abusive head trauma." (*Id.* at 368.) This, Dexter contends, was improper expert testimony concerning his guilt. Dexter has not demonstrated the trial court abused its discretion in allowing the testimony.

Admission of opinion testimony is within the discretion of the trial court. *Julian v. State*, 811 N.E.2d 392, 399 (Ind.Ct.App. 2004), *trans. denied.* Pursuant to Indiana Evidence Rule 702(a), the trial court has the discretion to allow a witness, who is "qualified as an expert by knowledge, skill, experience, training, or education," to tes-

---

**3.** We remind both counsel that the statement of facts "shall describe the facts relevant to the issues presented for review...." Ind. Appellate Rule 46(A)(6). In addition to his allegation there was not sufficient evidence to convict him of abuse of a dependent, Dexter raises issues regarding whether an expert witness expressed an opinion concerning Dexter's guilt, the sufficiency of evidence to support his habitual offender adjudication, and whether the trial court should have instructed

the jury on negligent conduct. But the Statement of Facts in Dexter's brief does not include any facts relevant to the latter two issues, and the State's Statement of Facts offers no facts relevant to the latter three issues. Although we may dismiss an appeal for violation of our appellate rules, *see Smith v. State*, 610 N.E.2d 265 (Ind.Ct.App.1993), *aff'd in relevant part*, 621 N.E.2d 325 (Ind.1993), we choose to exercise our discretion and address all four issues presented.

tify in the form of an opinion "if scientific, technical or specialized knowledge will assist the trier-of-fact to understand the evidence or determine a fact in issue." Opinion testimony "is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact." Evid. R. 704(a). But "[w]itnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Evid. R. 704(b).

In *Julian,* an arson prosecution, a State's witness testified a fire was intentionally set. Specifically, the expert testified the fire started when molten metal dripped onto flammable acrylic carpeting, arson is frequently used to cover up burglaries, and the wires in the control panel for the fire alarm showed very heavy localized burning that was consistent with the very high heat conditions from the tip of an oxyacetylene torch. We determined the witness "merely testified that the fire was set intentionally, not that Julian intended to set the fire. Therefore, [the witness] did not violate Evid. R. 704(b) by testifying as to the intent, guilt, or innocence of Julian." 811 N.E.2d at 400.

We adopt the *Julian* reasoning. The witness testified "this was most likely an abusive head trauma," (Tr. at 369), but did not testify she believed Dexter was responsible. The State later asked the witness whether, "hypothetically speaking," dropping the child while she was being tossed into the air would change the doctor's "ultimate conclusion ... regarding abuse or neglect." (*Id.* at 370.) Dexter objected to that question and the trial court sustained the objection, so the witness was prevented from commenting on that "ultimate conclusion." As Dexter has not demonstrated this was "a direct comment on the guilt of Dexter," (Br. of Ap-

pellant at 18), we cannot find an abuse of discretion.

## 2. *Negligence Instructions*

■ A decision not to give a tendered instruction is reviewed for an abuse of discretion. *Springer v. State,* 798 N.E.2d 431, 433 (Ind.2003), *reh'g denied.* We consider whether the instruction correctly states the law, whether there is evidence in the record to support giving the instruction, and whether the substance of the tendered instruction is covered by other instructions that are given. *Id.* As the substance of Dexter's instructions was covered by other instructions that were given, he has not demonstrated an abuse of discretion.

Dexter offered, and the court declined to give, the following instructions:

No. 2

If the Defendant were merely negligent in relation to the allegations of the State, then he is not criminally liable, and your verdict must be not guilty.

No. 2A

One must intend to do, or omit to do the act resulting in injury to another in order to be guilty of a criminal act. Now if you believe that the accused did not intentionally commit the act and he was only negligent, then your verdict must be not guilty.

No. 2B

Negligent conduct without more will not support a finding of an individual being guilty for a criminal act in Indiana.

(App. at 64.)

Dexter's instructions to the effect he could not be convicted if he "were merely negligent," *id.,* were covered by the court's instruction on the definition of neglect of a dependent. The jury was instructed Dexter must have "knowingly or intentionally" placed the dependent in a situation that endangered her life. (*Id.* at 72.) That

instruction indicates mere negligent conduct is not enough. The jury was also instructed about the definition of "knowingly" and "intentionally." (*Id.* at 86.) Declining Dexter's instructions was not error. *See Springer*, 798 N.E.2d at 435 ("Defendant's negligence argument is simply a statement that the State failed to prove that he was reckless. No additional instruction to the jury on this point was required.").

### 3. Sufficiency of Evidence—Neglect of a Dependent

Ind.Code § 35–46–1–4(a) provides: A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally:

> (1) places the dependent in a situation that endangers the dependent's life or health;
> (2) abandons or cruelly confines the dependent;
> (3) deprives the dependent of necessary support; or
> (4) deprives the dependent of education as required by law;

commits neglect of a dependent, a Class D felony. The crime is a Class A felony if it results in the death of a dependent under the age of fourteen. Ind.Code § 35–46–1–4(b)(3). Dexter asserts there is insufficient evidence he knowingly or intentionally placed the child in a situation that endangered her life or health.

To obtain a conviction of neglect of a dependent, the State must show the accused was subjectively aware of a high probability that he placed the dependent in a dangerous situation. *Hastings v. State*, 560 N.E.2d 664, 666–67 (Ind.Ct.App.1990), *trans. denied.* To make such a showing the State need only prove the accused was aware of facts that would alert a reasonable caregiver under the circumstances to take affirmative action to protect the child. *Id.* at 667. Such a determination requires the factfinder to resort to inferential reasoning to ascertain the mental state of the accused. *Id.* It looks to all the surrounding circumstances of the case when making this determination. *Id.*

The jury heard evidence Dexter's mother and A.H. had both warned Dexter not to throw the child in the air because they were afraid the child would be hurt. In addition, the jury heard the child was wet when Dexter was throwing her in the air over a bathtub. Because one reasonably could infer that a wet child would be more difficult to catch and that a fall onto a bathtub could cause more significant injuries than a fall onto many other surfaces in a home, the jury could have reasonably inferred that Dexter was subjectively aware of a high probability that he placed the child in a dangerous situation by tossing the wet child into the air over a bathtub.[4] In reviewing for sufficiency of evidence, we view the evidence most favorable to the verdict and the reasonable inferences therefrom and will af-

---

4. While we decline to find this jury's inferences unreasonable in light of the conditions under which Dexter chose to throw this child into the air, we note our holding, like the neglect statute itself, must not be read too broadly as there is a risk the definition of this crime could become unconstitutionally overbroad:

> Some years ago, our Supreme Court cautioned against reading the neglect statute

too broadly in *State v. Downey*, 476 N.E.2d 121 (Ind.1985), a case that addressed whether the statute was unconstitutionally vague. The case analyzed a version of Indiana Code Section 35–46–1–4(a)(1) that criminalized intentionally or knowingly placing a dependent in a situation that "may" endanger his or her life or health. *Id.* at 123. The Court noted that under a literal interpretation of the statute, "it

firm the conviction if there is substantial evidence of probative value from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Rohr v. State*, 866 N.E.2d 242, 248 (Ind.2007), *reh'g denied.* The State presented sufficient evidence to support the jury's conclusion that Dexter acted knowingly or intentionally.

4. *Sufficiency of Evidence—Habitual Offender*

■ When reviewing a claim of sufficiency of the evidence, we do not reweigh

the evidence or judge the credibility of the witnesses. *Jones v. State*, 783 N.E.2d 1132, 1139 (Ind.2003). We look only to the probative evidence supporting the verdict and the reasonable inferences therefrom to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id.* If there is substantial evidence of probative value to support the conviction, it will not be set aside. *Id.*

A person is an habitual offender if the jury finds the State proved beyond a rea-

would be a crime to raise a child in a high-rise apartment or to mop the kitchen floor with a bucket of water in the presence of a small child. This is the literal intendment of the provision, but that is not a rational intendment." *Id.* The court went on to state "that there must be something in a criminal statute to indicate where the line is to be drawn between trivial and substantial things so that erratic arrests and convictions for trivial acts and omissions will not occur." *Id.* (citing *Stone v. State*, 220 Ind. 165, 41 N.E.2d 609 (1942)). It concluded that construing the statute literally would render it unconstitutionally vague. *Id.*

To avoid striking down the neglect statute, however, the court read the word "may" out of the statute. *Id.* It also held that the statute must be read as applying only to situations that expose a dependent to an "actual and appreciable" danger to life or health. *Id.* The court found this construction to be consistent with the evident purpose of the neglect statute, which is "to authorize the intervention of the police power to prevent harmful consequences and injury to dependents" without having to wait for actual loss of life or limb. *Id.* In 1999, and in accordance with *Downey*, the General Assembly removed the word "may" from the neglect statute. It is plain, however, that *Downey*'s concerns regarding the potential overbreadth of the statute and the requirement that a danger be "actual and appreciable" persist.

It seems clear that to be an "actual and appreciable" danger for purposes of the neglect statute when children are concerned, the child must be exposed to some risk of physical or mental harm that goes

substantially beyond the normal risk of bumps, bruises, or even worse that accompany the activities of the average child. This is consistent with a "knowing" mens rea, which requires subjective awareness of a "high probability" that a dependent has been placed in a dangerous situation, not just any probability. *See Armour [v. State*, 479 N.E.2d 1294, 1297 (Ind.1985)]. We would note, for example, that allowing a child to ride a bicycle arguably could fall within the literal purview of the neglect statute, given that several hundred persons die and many thousands more are injured each year in cycling accidents. *See* National Highway Traffic Safety Administration, *Traffic Safety Facts 2002* (stating that 662 cyclists were killed and 48,000 were injured in 2002 traffic accidents, with twenty-four percent of deaths and thirty-nine percent of injuries involving children under sixteen years of age), available at http://www-nrd.nhtsa.dot.gov/pdf/nrd–30/NCSA/TSF2002/2002pcyfacts.pdf. Riding a bicycle clearly endangers a child's life or health, according to the literal language of the neglect statute, but no rational person could read it as reaching so far as to criminalize allowing one's child to ride a bike. Additionally, The Wizard of Oz causes many a small child to have nightmares after watching it for the first time, but obviously this level of emotional trauma is not the concern of the neglect statute. *Gross v. State*, 817 N.E.2d 306, 308–09 (Ind.Ct.App.2004) (finding insufficient evidence of neglect where defendants taped one child to a stroller and bound another child's wrists with tape while playing a "hostage" game that the children enjoyed).

sonable doubt that the person had two prior unrelated felony convictions. Ind. Code § 35–50–2–8(g). To demonstrate one of Dexter's two prior convictions,[5] the State offered an exhibit that included charging informations, a warrant, the plea agreement, rules of probation, and a certified, but unsigned, copy of the order entering the judgment of conviction.

Ind. Trial Rule 58 provides that on a decision of the court, the court "shall promptly prepare and sign the judgment." It further provides a judgment "shall contain ... the signature of the judge."[6] An abstract of judgment must therefore include a judicial signature in order to be considered a final record of a trial court's ruling: "standing alone, an unsigned abstract fails to represent the trial court's final judgment and, therefore, is insufficient to prove a prior conviction for purposes of proving ... statuses as a serious violent felon and a habitual offender." *Abdullah v. State*, 847 N.E.2d 1031, 1035 (Ind.Ct.App.2006). Thus the State cannot prove a conviction with an unsigned abstract of judgment absent any other supporting documents showing the fact of a conviction. *Id.*

We recently reaffirmed that an abstract of judgment must include a judicial signature in order to be a final record of the

court's ruling. *Woods v. State*, 939 N.E.2d 676, 678 (Ind.Ct.App.2010). But we found the *Woods* record, unlike that in *Abdullah*, contained additional evidence of Woods' convictions and the State therefore had presented sufficient evidence of the necessary predicate offenses to prove Woods was an habitual offender. *Id.* at 679. In *Woods*, the additional evidence was a sentencing order that noted Woods' guilty plea and the court's acceptance of the plea agreement. In the guilty plea, Woods admitted to the conviction the State sought to use as the predicate offense for the habitual offender count. That order was signed by the presiding trial judge and was sufficient evidence to support the habitual offender conviction. *Id.*

The case before us is more like *Woods*. State's Exhibit 91 includes a Rules of Probation form dated May 31, 2000, and signed by the judge.[7] As one could reasonably infer Dexter must have been convicted of the underlying offense before being placed on probation, there was sufficient evidence to support the habitual offender determination.

## CONCLUSION

The challenged expert testimony was admissible, the jury was properly instructed, and there was sufficient evidence to

---

**5.** Dexter had two convictions, one in 2000 and one in 2005. Dexter does not challenge the adequacy of the proof of the 2005 conviction.

**6.** Those were the only parts of T.R. 58 addressed in *Abdullah*, where we emphasized the word "shall" in both phrases. We cited *Johnson v. Cornett*, 474 N.E.2d 518, 519 (Ind. Ct.App.1985), *reh'g denied, trans. denied:* "[t]hese rules of procedure [including the signature requirement in T.R. 58] make it clear that a certain course of action must be adhered to before any court action has finality."

We therefore reject both the State's unexplained assertion this court "misread Trial Rule 58" in *Abdullah* and its assertion *Abdullah* "was wrongly decided in the first place." (Br. of the Appellee at 17.)

**7.** We note a slight discrepancy in the cause number on that Rules of Probation form, but agree with the State that appears to be a clerical error. We further note the judge who signed that document in May 2000 appears to be the same person who served as prosecutor in the case before us.

support Dexter's conviction and habitual offender finding. We accordingly affirm.

Affirmed.

FRIEDLANDER, J., and MATHIAS, J., concur.