FILED

Sep 26 2024, 9:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



I N  T H E

# Court of Appeals of Indiana

Nathaniel Jordan,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

September 26, 2024

Court of Appeals Case No.
23A-CR-1780

Appeal from the Delaware Circuit Court

The Honorable Linda Ralu Wolf, Judge

Trial Court Cause No.
18C03-1706-F1-7

---

**Opinion by Judge Weissmann**
Judges Foley and Felix concur.

**Weissmann, Judge.**

[1] Nathaniel Jordan appeals his convictions arising from an alcohol-fueled, one-car automobile accident that killed his girlfriend's six-year-old daughter and injured three other children. At the time of the crash, Jordan was in the car's front passenger seat, physically fighting with his intoxicated girlfriend, who was driving.

[2] Jordan was convicted of Level 1 felony neglect of a dependent resulting in death, Level 5 felony battery, and three counts of Level 6 felony neglect of a dependent. He asserts a variety of trial errors, most notably that the trial court improperly denied his claim of self-defense to the neglect counts. He also seeks revision of his 41-year sentence for his crimes. We affirm.[1]

## Facts

[3] Jordan shared a home with his girlfriend, Jessica Skeens, and her four children: T.W. (age 6), M.S. (age 5), H.S. (age 3), and E.J. (almost 2). E.J. was Jordan and Skeens's biological child, but Jordan had been involved with the other children for most of their lives. T.W. called him "Daddy," and Jordan was present at M.S.'s birth. Jordan cared daily for the four children until he began working long hours to provide the family's sole financial support.

---

[1] We conducted oral argument in this case August 21, 2024, at Whiteland Community High School. We thank the school administration and students for their generosity in hosting this argument. We also thank the parties' counsel for their able presentations.

[4] About a month after the couple moved in together, Jordan realized that Skeens depended on alcohol and was often intoxicated. Yet Skeens routinely drove the children in a van that had been damaged heavily in a prior collision. Both Jordan and Skeens considered the van unsafe, and neither had a valid driver's license.

[5] Despite these circumstances, Jordan and Skeens drove the children out to lunch and then to the Muncie Children's Museum in Skeens's van. Skeens had been drinking whiskey and smoking marijuana that morning and was intoxicated. The eldest two children—T.W. and M.S.—lacked the booster-style child restraint systems required by Indiana law. T.W. was wearing a seatbelt but was not wearing it properly.

[6] Jordan drove the van until the group stopped at a retail store, where Jordan purchased a cooler and ice for the beer that he had brought with him. Although Jordan knew that Skeens was intoxicated, he insisted that she drive. Jordan then drank beer while riding in the passenger seat.

[7] Skeens drove the group to her father's home in Yorktown. As they prepared to leave, Skeens sat down in the passenger seat. Jordan pulled her out and directed her to drive. For the next hour, Skeens drove while she and Jordan argued and Jordan drank beer.

[8] At one point, Jordan threw Skeens's bottle of alcohol out the window when she tried to drink from it while driving. Skeens stopped the van on the side of State Road 67 to retrieve the bottle, and the couple became embroiled in an

altercation outside the vehicle. Bystanders stopped and offered Skeens a ride, but she declined. Skeens attempted to walk away, but Jordan refused to care for the children by himself. He threw the keys toward her and insisted she continue driving. He then sat in the front passenger seat, opened a beer, and began drinking it.

[9] As Skeens drove on State Road 67, she hit Jordan several times. Jordan "saw red" and "got mad" and punched Skeens in the face repeatedly as she was driving about 64 mph in a 55-mph zone. Tr. Vol. III, p. 233. Skeens seemingly lost control of the wheel, which Jordan grabbed before the van left the road and rolled. T.W. was partially ejected and crushed when the van rolled. She died at the scene. Everyone else in the van survived, although Skeens suffered serious injuries. Seven bottles of alcohol from the van were found in the area near the crash.

[10] Skeens was visibly intoxicated at the scene, and two hours after the crash, her blood alcohol level was .063/100 ml. She also had THC in her system. Jordan smelled of alcohol and told police that he "saw red" just before he hit Skeens and "this is my fault." Tr. Vol. III, pp. 53, 61.

[11] Jordan was charged with Level 1 felony neglect of a dependent resulting in death as to T.W., Level 5 felony battery against Skeens, three counts of Level 6 felony neglect of a dependent as to all the surviving children, Class A misdemeanor driving while suspended, and Class B misdemeanor possession of marijuana. Skeens also was charged with multiple offenses. She ultimately was

convicted of Level 1 felony neglect and Class B misdemeanor possession of marijuana for which she was sentenced to 41 years imprisonment.

[12] At Jordan's jury trial, over Jordan's objection, the trial court admitted 5-year-old M.S.'s statements to medical personnel that Jordan grabbed the steering wheel before the crash. The Indiana State Police accident reconstructionist who reviewed the crash opined that Skeens's intoxication and Jordan's act of striking her were primary causes of the crash. But the reconstructionist also testified that his opinion might change if he had evidence that Skeens started the altercation.

[13] Jordan did not testify at trial, but his defense theory was that he acted in self-defense when striking Skeens. Jordan sought a jury instruction on self-defense as to the battery and all the neglect counts. The trial court limited the jury's consideration of self-defense to the battery count, however.

[14] During opening arguments, defense counsel contended Jordan acted in self-defense and would testify at trial. Defense counsel also repeatedly told the jury that he would not "lie to you." Tr. Vol. IV, pp. 82, 85. In response, the State noted, without objection, that the defense did not address Jordan's statements to police or the fact that Jordan did not testify at trial. Jordan later objected to the prosecutor's statements after the jury began deliberating.

[15] The jury returned verdicts of guilty on all counts except possession of marijuana. The trial court sentenced Jordan to 41 years imprisonment.

## Discussion and Decision

[16] Jordan raised six issues on appeal. We restate them as follows:

A. Whether there was sufficient evidence to support his convictions for Level 1 felony neglect of a dependent resulting in death and Level 5 felony battery;

B. Whether the trial court properly refused to instruct the jury as to self-defense on the neglect counts;

C. Whether the trial court erred in admitting M.S.'s statements to medical personnel revealing Jordan grabbed the steering wheel before the crash;

D. Whether the prosecutor committed misconduct rising to fundamental error during closing arguments; and

E. Whether Jordan's 41-year aggregate sentence is inappropriate.

[17] We conclude that sufficient evidence supported Jordan's challenged convictions and that the trial court did not abuse its discretion in refusing to instruct the jury on self-defense as to the neglect counts or in admitting M.S.'s statements. We also conclude that any prosecutorial misconduct was not fundamental error and that Jordan's sentence does not warrant revision.

## I. Sufficiency of the Evidence

[18] When reviewing the sufficiency of the evidence of a conviction, this Court considers only the probative evidence and reasonable inferences that support the jury's verdict. *Owen v. State*, 210 N.E.3d 256, 264 (Ind. 2023), *reh. denied*. Without reweighing the evidence or judging the credibility of witnesses, this Court will affirm the conviction unless no reasonable factfinder could conclude

that the elements of the crime were proven beyond a reasonable doubt. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We find the evidence sufficient to support Jordan's convictions for both Level 1 felony neglect of a dependent resulting in death and Level 5 felony battery.

## A.  Neglect of a Dependent Resulting in Death

At the time of the crash, the felony neglect statute provided:

> (a) A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally:
>
> > (1) places the dependent in a situation that endangers the dependent's life or health . . .
>
> commits neglect of a dependent, a Level 6 felony.
>
> (b) However, the offense is: . . .
>
> > (3) a Level 1 felony if it is committed under subsection (a)(1) . . . by a person at least eighteen (18) years of age and results in the death of a dependent who is less than fourteen (14) years of age[.]

Ind. Code § 35-46-1-4 (2016). Thus, to convict Jordan of Level 1 felony neglect of a dependent resulting in death, the State had to prove beyond a reasonable doubt that while Jordan had care of T.W. and while T.W. was Jordan's dependent, Jordan knowingly placed T.W. in a situation that endangered her life or health and which resulted in her death. I.C. § 35-46-1-4(a)-(b) (2016).

Jordan's argument on appeal is three-pronged. He claims the State did not prove beyond a reasonable doubt that: (1) he was responsible for the lack of proper child restraints for T.W.; (2) he "place[d]" T.W. in danger; or (3) his actions or omissions caused T.W.'s death.

## 1. Child Restraint

At issue is Indiana Code § 9-19-11-2(a) (2017), which specifies that "[a] person who operates a motor vehicle in which there is a child less than eight (8) years of age who is not properly fastened and restrained according to the child restraint system manufacturer's instructions by a child restraint system commits a Class D infraction." Jordan claims that because he did not own the van and was not driving it at the time of the crash, he had no duty to ensure T.W. was properly restrained. For that reason, he argues, T.W.'s lack of proper restraints is not evidence of his neglect of her.

But Jordan ignores that he was driving the vehicle when he, Skeens, and the four children departed their home. At a minimum, the child restraint statute placed on Jordan the duty to ensure T.W. was properly restrained while Jordan drove the vehicle. *See id.* But when he stopped driving, Jordan insisted that an intoxicated Skeens drive the vehicle. This ensured that the circumstance he created—driving without proper restraints for T.W.—would continue. Given Skeens's intoxication, Jordan's insistence that Skeens drive also increased the chance of an accident that would injure an improperly restrained T.W.

That said, even if Jordan lacked a duty to provide a child restraint system for T.W. at the time of the crash, the record contains substantial other evidence of neglect that would support Jordan's conviction. He insisted Skeens drive a vehicle they both considered unsafe when he knew she was intoxicated. He did so simply because he wanted to rest and drink beer. Jordan also punched Skeens repeatedly in the face while she was driving at high speed just before the crash. Therefore, the jury had substantial evidence other than the lack of restraint from which it could find that Jordan knowingly placed T.W. in a situation that endangered her life or health and which resulted in her death. Ind. Code § 35-46-1-4(a)-(b) (2016).[2]

## 2. "Place" in Danger

Jordan also asserts he did not "place[]" T.W. in danger, within the meaning of the neglect statute, because he lacked legal authority to prevent Skeens from driving T.W. or to force Skeens to properly restrain T.W. *See* Ind. Code § 35-46-1-4(a)(1) (2016). To obtain a conviction for neglect of a dependent, the State must prove the accused's subjective awareness of a high probability that the

---

[2] Jordan is correct in suggesting that, during closing arguments, the State indicated that his failure to properly restrain T.W. alone could justify Jordan's conviction for Level 1 felony neglect. Tr. Vol. IV, p. 79. But the State also pointed to the substantial other evidence of neglect on which the jury could return a guilty verdict on this count. We are not persuaded by Jordan's speculative argument that the jury rested its verdict solely on his failure to ensure T.W. was properly restrained. As revealed in the rest of our discussion of this sufficiency claim, the other substantial evidence of neglect was sufficient to justify Jordan's conviction even if his failure to restrain T.W. could not support his Level 1 felony neglect conviction. *See Thrash v. State*, 88 N.E.3d 198, 205 (Ind. Ct. App. 2017) (noting that an appellate court will uphold a conviction "if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt").

accused placed the dependent in a dangerous situation. *Hastings v. State*, 560 N.E.2d 664, 666-67 (Ind. Ct. App. 1990). "[T]he State need only prove the accused was aware of facts that would alert a reasonable caregiver under the circumstances to take affirmative action to protect the child." *Dexter v. State*, 945 N.E.2d 220, 224 (Ind. Ct. App. 2011), *aff'd in relevant part*, 959 N.E.2d 235, 237 (Ind. 2012).

[25] Contending the State did not meet this standard here, Jordan relies primarily on *Fisher v. State*, 548 N.E.2d 1177 (Ind. Ct. App. 1990). In *Fisher*, this Court reversed a conviction for Class B felony neglect of a dependent based on inadequate evidence that the defendant "placed" an unrelated child in an endangering situation. *Id.* at 1180. The Court found the defendant lacked authority to separate the mother from the child and therefore did not place the child in an endangering situation: that is, living with the child's abusive mother. *Id.* at 1179-80. Fisher was merely culpable for failing to report the abuse to authorities, according to the Court. *Id.*

[26] Jordan contends he similarly lacked legal authority to remove T.W. from Skeens. But Jordan's argument ignores two important points. First, the neglect statute "does not limit its coverage to those acting only with authority or permission but [applies also to] one having the care of a dependent[,] whether assumed voluntarily or because of a legal obligation." *Dowler v. State*, 547 N.E.2d 1069, 1072 (Ind. 1989); *see* Ind. Code § 35-46-1-4(a) (2016). Jordan does not contest that T.W. was his dependent for whom he assumed care. And to the extent *Fisher* does not recognize that legal authority over a child is unnecessary

for a neglect conviction, it appears inconsistent with our Supreme Court's decision in *Dowler.*

[27] Second, the defendant in *Fisher* was not implicated in the child's mistreatment. Jordan's behavior was far more expansive and egregious. Whereas the defendant in *Fisher* was aware of the mother's abuse but failed to report it, Jordan was an active participant in the neglect that unfolded. 548 N.E.2d at 1178-80. Whether an accused knowingly places the dependent in a dangerous situation requires the Court to "look to all the surrounding circumstances of a case to determine if a guilty verdict is proper." *Villagrana v. State*, 954 N.E.2d 466, 468 (Ind. Ct. App. 2011). The totality of the circumstances shows that Jordan knowingly placed T.W. in a dangerous situation. *See McGowan v. State*, 89 N.E.3d 424, 429 (Ind. Ct. App. 2017) (distinguishing *Fisher* and ruling that McGowan did not merely fail to report her boyfriend's drug activities to which the children were exposed; rather, "McGowan's own actions [in exposing children to drug use and dealing] placed the children in a dangerous situation").

## 3. Proximate Cause

[28] Jordan next claims the evidence of Level 1 felony neglect was inadequate because his actions and omissions did not cause T.W.'s death. *See generally* Ind. Code § 35-46-1-4 (2016) (increasing neglect to a Level 1 felony where it "results in the death of a dependent" who is less than 14 years old). The "results in the death of a dependent" language in the neglect statute implicates proximate cause, a term construed in a civil context to require "[a]t a minimum . . . that

the injury would not have occurred but for the defendant's conduct." *Patel v. State*, 60 N.E.3d 1041, 1052 (Ind. Ct. App. 2016) (citation omitted).

[29] Jordan asserts that the evidence of proximate cause is lacking because Skeens's act of hitting him broke the causal chain between his actions and T.W.'s death. *See generally Cannon v. State,* 142 N.E.3d 1039, 1043 (Ind. Ct. App. 2020) ("An intervening cause is an independent force that breaks the causal connection between a defendant's actions and the victim's injuries."). But Jordan started the events leading to T.W.'s death by driving her in a dangerous van without proper restraints before eventually insisting that a drunk driver take the wheel. And even if Skeens's blows broke the causal chain, the jury could have viewed Jordan's subsequent punching of Skeens's face while she was driving an unsafe van at high speeds without T.W. in proper child restraints as a proximate cause of T.W.'s death.

[30] Jordan's related claim—that the lack of proper child restraints for T.W. did not cause her death—is unavailing. In support of this claim, Jordan cites the testimony of the Indiana State Police accident reconstructionist. Although this witness viewed the primary causes of the accident as Jordan's act of punching Skeens multiple times and Skeens's intoxication, he opined that a proper booster seat would have increased T.W.'s chances of survival. Tr. Vol. III, p. 223. Given that Skeens drove at Jordan's insistence and Jordan knew T.W. lacked the required booster seat, this evidence collectively supports the jury's finding that Jordan's neglect of T.W.—including his failure to ensure T.W. had

proper child restraints when he drove her in the van from their home—was a proximate cause of her death.

## B. Battery

[31] Jordan also contends the State failed to prove that he committed battery, a Level 5 felony. For Jordan to be found guilty of this offense, the State needed to prove beyond a reasonable doubt that Jordan knowingly or intentionally touched Skeens in a rude, insolent, or angry manner, resulting in serious bodily injury. Ind. Code § 35-42-2-1(g)(1) (2017). Jordan does not dispute that the State proved these elements. Instead, he claims the State failed to rebut his claim of self-defense. But the record shows that a reasonable jury could find Jordan guilty of battery either because his self-defense claim was unavailable or because it was successfully rebutted by the State.

[32] Challenges to the adequacy of the State's evidence rebutting a defendant's self-defense claim are reviewed like any other sufficiency of the evidence claim. *Brown v. State*, 738 N.E.2d 271, 273 (Ind. 2000). The Court does not reweigh the evidence or judge the credibility of any witness. *Garland v. State*, 719 N.E.2d 1236, 1238 (Ind. 1999). Review is limited to considering "only the evidence that supports the verdict and the resulting reasonable inferences; and we will affirm if a reasonable jury could find the defendant guilty beyond a reasonable doubt." *Id.*

[33] To begin with, the State contends Jordan is not entitled to raise self-defense at all because he was committing a crime—neglect—at the time he struck Skeens.

The self-defense statute specifies that a person cannot use force defending himself if he, among other things, "is committing . . . a crime." Ind. Code § 35-41-3-2(h)(1) (2017). But our Supreme Court has stated that "we do not strictly apply that statute because '[t]he legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an unjust or absurd result.'" *Gammons v. State*, 148 N.E.3d 301, 304 (Ind. 2020) (quoting *Mayes v. State*, 744 N.E.2d 390, 393 (Ind. 2001)). "Instead, we have held that 'there must be an immediate causal connection between the crime and the confrontation.'" *Id.*

[34] The parties dispute whether such a causal connection exists between Jordan's crimes of neglect and battery. The State views the neglect as ongoing and the physical altercation as part of it. Jordan, on the other hand, maintains Skeens's violence toward him was unrelated to whether he committed neglect of any of the children.

[35] Here, the act of battery on Skeens was part of the series of actions that the jury could reasonably view as constituting Jordan's neglect of the children in the vehicle. Thus, the jury reasonably could have found that Jordan could not have acted in self-defense because the battery and neglect counts had an immediate causal connection. *See generally Gammons*, 148 N.E.3d at 306; *Mayes*, 744 N.E.2d at 394 (whether an "immediate causal connection" between the two crimes exists and bars a claim of self-defense is a question left to the factfinder). The jury, in fact, was specifically instructed that it could make such a finding. Tr. Vol. IV, p. 45.

[36] But even if self-defense were available to Jordan, the record supports the jury's rejection of it. "Self-defense is recognized as a valid justification for an otherwise criminal act." *Miller v. State*, 720 N.E.2d 696, 699 (Ind. 1999). As prescribed by statute, "[a] person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force." Ind. Code § 35-41-3-2(c) (2017). Once the defendant raises a self-defense claim, the State carries the burden of disproving beyond a reasonable doubt one of the following elements of that defense: (1) the defendant was in a place where he had a right to be; (2) the defendant did not provoke, instigate, or participate willingly in the violence; and (3) the defendant had a reasonable fear of death or great bodily harm. *Brown v. State*, 738 N.E.2d 271, 273 (Ind. 2000).

[37] The parties debate whether Jordan provoked, instigated, or participated willingly in the violence. The record shows, however, that Jordan and Skeens were mutual verbal combatants until Skeens initiated the physical violence. The State also appears to have disproved the third requirement for self-defense: that the defendant had a reasonable fear of death or great bodily harm. The State did this through Jordan's own statements. He admitted punching Skeens multiple times because he "saw red" and "got mad" when Skeens hit him. Tr. Vol. III, p. 233. From this evidence, the jury could conclude that Jordan acted out of anger and not out of fear of great bodily harm or death. In fact, Jordan's act of punching Skeens as she drove may be reasonably viewed as increasing, rather than decreasing, the risk of great bodily harm or death.

[38] The jury also could have rejected Jordan's self-defense claim based on Jordan's use of unreasonable force. The amount of force used to protect oneself must be "proportionate to the urgency of the situation." *Larkin v. State*, 173 N.E.3d 662, 670 (Ind. 2021) (quoting *Hollowell v. State*, 707 N.E.2d 1014, 1021 (Ind. Ct. App. 1999)). When the defendant has used more force than necessary to repel an attack, the right to self-defense is extinguished, and the ultimate result is that the victim then becomes the perpetrator. *Id.*

[39] When Skeens hit Jordan with her hand while she was driving, he reciprocated by pounding her face with his fist. As previously noted, he admitted his actions were the product of his rage. From this evidence, the jury could conclude that Jordan acted out of anger and not to repel the attack.

## II.  Self-defense Instructions

[40] Jordan raises a second, more novel claim related to self-defense. He argues the trial court abused its discretion when it instructed the jury on self-defense only in relation to the battery count but not as to the neglect counts. A trial court has discretion to instruct the jury and will generally be reversed only upon an abuse of that discretion. *Paul v. State*, 189 N.E.3d 1146, 1159 (Ind. Ct. App. 2022). When reviewing a trial court's refusal to give an instruction, we consider whether: (1) the instruction is a correct statement of the law; (2) there was evidence in the record to support giving the instruction; and (3) the substance of the instruction is covered by other instructions given to the jury. *Id.* Here, the issue is whether the trial court erred in finding that the record did not support the self-defense instruction on the neglect counts.

Jordan asserts that the instruction was merited "[t]o the extent that Jordan's act of striking Skeens formed the basis of the State's theory of neglect." Appellant's Br., p. 37. But Jordan's blows to Skeens also were the basis of the battery count, and the jury rejected Jordan's claim of self-defense as to battery. Jordan offers no basis for finding that the jury would have found his self-defense claim any more persuasive in the context of the neglect counts than it did in the battery context, given that Jordan's self-defense claim focuses on the same act (Jordan punching Skeens while she was driving at a high speed in a vehicle they viewed as unsafe). And more importantly, the defense is not even available to Jordan here because the neglect and battery counts have an immediate causal connection. Jordan has failed to prove that the failure of the trial court to broaden the self-defense instruction to apply to the neglect counts prejudiced his substantial rights, as is required for reversal based on instructional error. *See Eberle v. State*, 942 N.E.2d 848, 861 (Ind. Ct. App. 2011).

## III.  Admission of M.S.'s Statements

Jordan next argues that the trial court erred in admitting evidence of 5-year-old M.S.'s statements to medical providers. The evidence came in two forms: (1) State's Exhibit 101, which consisted of the medical notes of Dr. Brad Hayes, the emergency room physician who treated M.S. and the other car crash survivors; and (2) Dr. Hayes's trial testimony. Jordan specifically challenges the admission of State's Exhibit 101 but not Dr. Hayes's trial testimony.

State's Exhibit 101 contained the following information:

> Pt states that mom and her boyfriend were fighting, boyfriend grabbed the wheel causing them to go off the road. Mom states that the accident was due to her having bad tires and no money to replace them. EMS states pt has been great with answering questions the entire time they have been with her.

Tr. Vol. V, p. 178. Jordan objected on hearsay grounds to State's Exhibit 101. Although the State suggests the trial court admitted M.S.'s statements under the medical diagnosis exception to the hearsay rule, the trial court did not specify its rationale.

[44] "The decision to admit or exclude evidence at trial is squarely within a trial court's discretion." *VanPatten v. State*, 986 N.E.2d 255, 260 (Ind. 2013). This Court will not reverse such a decision unless it is clearly contrary to the logic and effect of the facts and circumstances of the case or misinterprets the law. *Id.*

[45] State's Exhibit 101 was cumulative to Dr. Hayes's testimony, to which Jordan did not object. Although Dr. Hayes refreshed his memory of M.S.'s statements by reviewing State's Exhibit 101, his testimony about M.S.'s statements was broader than that revealed by the exhibit. Tr. Vol. III, p. 84. Dr. Hayes also appeared to testify from his own recollection of his interaction with M.S. The admission of cumulative evidence is harmless. *D.Z. v. State*, 100 N.E.3d 246, 249 (Ind. 2018).

[46] But even if State's Exhibit 101 was not cumulative to Dr. Hayes's testimony, Jordan's claim fails. At issue is Indiana Evidence Rule 803(4), which provides an exception to the hearsay rule for:

> [a] statement that: (A) is made by a person seeking medical diagnosis or treatment; (B) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (C) describes medical history; past or present symptoms, pain, or sensations; their inception; or their general cause.

"Rule 803(4)'s exception is grounded in a belief that the declarant's self-interest in obtaining proper medical treatment makes such a statement reliable enough for admission at trial." *VanPatten*, 986 N.E.2d at 260. "[M]ore simply put, Rule 803(4) reflects the idea that people are unlikely to lie to their doctors because doing so might jeopardize their opportunity to be made well." *Id.*

[47] Determining whether a statement meets this reliability requirement requires a two-step analysis. First, a court must determine whether "the declarant [is] motivated to provide truthful information in order to promote diagnosis and treatment." *McClain v. State,* 675 N.E.2d 329, 331 (Ind. 1996). Second, the court decides whether "the content of the statement [is] such that an expert in the field would reasonably rely on it in rendering diagnosis or treatment." *Id.*

## A. Motivation Prong

[48] The first prong of the test—the declarant's motive to promote treatment or diagnosis—is crucial to a determination of reliability. *Id.* The declarant must subjectively believe that the declarant was making the statement for the purpose of receiving medical diagnosis or treatment. *Id.* When an adult patient consults with a physician, the patient's desire to seek and receive treatment may be inferred from the circumstances. *Id.*

[49] But such an inference is not obvious when the declarant is a young child brought to treatment by someone else. *Id.* In that context, the evidence must show that the child understood the medical professional's role to trigger the motivation to provide truthful information. *VanPatten,* 986 N.E.2d at 260. This foundation can come from the medical professional's testimony about the medical professional's interaction with the child, especially, as here, when the child does not testify. *Id.* at 261.

[50] Jordan argues that the record is silent as to M.S.'s understanding of the role of the medical professionals to whom she made her statements about the crash. The State argues that the circumstances—an emergency room visit right after a traumatic accident—allow an inference that even a young child would understand the doctor's role. But the State offers no supporting authority for this contention.

[51] Courts addressing the admissibility of a child's statements to medical providers after a traumatic event have focused on the medical provider's explanations to the child, not on the location or cause of the treatment. *See, e.g.*, *id.* at 265-67 (finding 6-year-old child molesting victims' statements to forensic nurse at sexual assault treatment center were inadmissible without any evidence that children understood importance of telling nurse truth to obtain accurate medical treatment); *see also McClain*, 675 N.E.2d at 331 (ruling that child molesting victim's statements to therapist were inadmissible because "the record is devoid of any evidence showing that the victim understood that he was speaking to a trained professional for purpose of obtaining diagnosis of, or

providing treatment for, emotional or psychological injuries"); *In re W.B.*, 772 N.E.2d 522, 533 (Ind. Ct. App. 2002) (finding therapist's testimony about child's statements inadmissible when there was no evidence from which child's motivation to tell truth could be determined).

[52] This is true even when the child's hearsay statements arose in a hospital setting. *See, e.g.*, *Cooper v. State*, 714 N.E.2d 689, 692-94 (Ind. Ct. App. 1999) (finding child's statements to emergency room nurse were admissible under Rule 804(3) in part because nurse identified herself and her role, explained that child was in the hospital, and explained purpose of examination and interview).

[53] Here, the record is silent as to any explanations that Dr. Hayes or any another medical provider offered to M.S. The record also does not reveal any evidence that M.S. understood that she was being questioned to reveal her injuries and develop a proper course of treatment. Therefore, the first prong of the foundational requirements for admission of M.S.'s hearsay statements was not met, leaving State's Exhibit 101 inadmissible. *See McClain*, 675 N.E.2d at 331.

[54] But the State claims any error in the admission of State's Exhibit 101 was harmless because of the remaining admissible evidence establishing battery and neglect. Error is harmless if its probable effect on the jury, given all the evidence in the case, is minor enough to avoid affecting the substantial rights of the parties. *Blount v. State*, 22 N.E.3d 559, 564 (Ind. 2014).

[55] The State presented other evidence of Jordan's actions endangering the children, including directing an intoxicated Skeens to drive, failing to properly

restrain T.W., and punching Skeens while she drove. The accident reconstructionist testified that Skeens's intoxication and Jordan's act of striking her were primary causes of the accident. But as Jordan argues, the State focused during closing arguments on the evidence that Jordan grabbed the wheel. Still, given the totality of the evidence, Jordan has failed to show that the probable impact of any error in the admission of M.S.'s statements affected his substantial rights. We therefore conclude that the erroneous admission of Exhibit 101 was harmless.

## IV. Prosecutorial Misconduct

Jordan next asserts the prosecutor committed misconduct in rebuttal closing argument by commenting on Jordan's failure to testify and defense counsel's "truthfulness." Appellant's Br., p. 38. Because Jordan waited until after closing arguments were concluded to object, he raises the claim as fundamental error. Thus, he must establish both that prosecutorial misconduct occurred and that it constituted fundamental error. *Ryan v. State*, 9 N.E.3d 663, 667-68 (Ind. 2014).

"Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to 'make a fair trial impossible.'" *Ryan*, 9 N.E.3d at 668 (quoting *Benson v. State,* 762 N.E.2d 748, 756 (Ind. 2002)). This means the defendant must show "that, under the circumstances, the trial judge erred in not *sua sponte* raising the issue because alleged errors (a) 'constitute clearly blatant violations of basic and elementary principles of due process' and (b) 'present an undeniable and substantial potential for harm.'" *Id.*

"Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct." *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). "The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct." *Id.*

The challenged comments occurred during the State's rebuttal closing argument. The prosecutor argued:

> [Defense counsel] told you multiple times during that closing- not going to lie to you he's not going to lie to us. He told you in his opening statement this Defendant was going to testify. That didn't happen. He told you in that opening statement that these two were together for three weeks—nope—wrong again. He told you in his opening statement that this Defendant did not have the care, custody and control of those kids- wrong. He told you that we have to prove that this Defendant was the cause of that accident. Again—wrong.

Tr. Vol. IV, p. 93. At the time, the prosecutor knew that Jordan had chosen not to testify against the advice of his counsel.

The State claims the prosecutor's statements were merely a response to defense counsel's statements. Defense counsel alleged during opening arguments that Jordan would testify that he had lied to police about striking Skeens. Tr. Vol. II, p. 203. Jordan later changed his mind about testifying and never took the stand to offer that defense. And as the prosecutor noted, defense counsel during closing arguments also repeatedly stated that defense counsel would not lie to the jury. Tr. Vol. IV, pp. 82, 85. The State notes that "[p]rosecutors are entitled

to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable." Appellee's Br., p. 42 (quoting *Cooper*, 854 N.E.2d at 836).

[61] Although defense counsel contributed to the problems here, the State appears to minimize the prosecutor's statements. But the comments suggesting defense counsel lied to the jury border, if not cross, the misconduct line. In *Collins v. State*, 966 N.E.2d 96, 107 (Ind. Ct. App. 2012), the prosecutor during closing arguments made derogatory comments about defense counsel, "portraying her as a liar, or at least suggesting that she was dishonest with the jury." This Court found these comments to be prosecutorial misconduct that contributed to its finding of fundamental error. *Id.* As the *Collins* Court stated, "disparaging opposing counsel seldom brings about good results." *Id.*

[62] Also worrying is the prosecutor's statement that defense counsel had represented in opening arguments that Jordan would testify, which Jordan ultimately did not do. "The Fifth Amendment privilege against compulsory self-incrimination is violated when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence." *Moore v. State*, 669 N.E.2d 733, 739 (Ind. 1996). But the prosecutor's comment about Jordan's failure to testify said more about defense counsel than Jordan. Although the comment should have been avoided, the comment did not explicitly invite the jury to draw an adverse inference from Jordan's silence. Also, any damage from this comment about Jordan's silence likely was reduced by the trial court's final instruction telling

the jury that it should not consider for any purpose Jordan's decision not to testify. A jury is presumed to follow the court's correct instructions. *See Weisheit v. State*, 26 N.E.3d 3, 20 (Ind. 2015).

[63]     Ultimately, we must focus on the effect of the prosecutor's comments about defense counsel on the verdict. The *Collins* Court found the prosecutorial misconduct constituted fundamental error because it not only impugned defense counsel but also impacted the defendant's primary defense. 966 N.E.2d at 107. In two older decisions involving a prosecutor's disparaging comments about defense counsel, however, this Court determined the misconduct likely did not impact the verdict in light of the substantial evidence of guilt. *Marcum v. State*, 725 N.E.2d 852, 858-60 (Ind. 2000) (involving prosecutor's comments that "this is . . . a response to your nonsense," "Judge I guess we can move the jury out and we can do a quick evidence course here for [defense counsel]," and "[h]e is trying to mislead this jury"); *Brock v. State*, 423 N.E.2d 302, 304-05 (Ind. 1981) (finding prosecutor's statement that defense counsel was "pulling the most low life tricks in this case" was improper but not directed at the defendant; instead, the statement related to what defense counsel termed a "rather insignificant" personal matter between the prosecutor and defense counsel).

[64]     Given the substantial evidence of Jordan's guilt, we conclude that any prosecutorial misconduct in closing arguments did not rise to fundamental error. The evidence overwhelmingly showed a series of actions and omissions by Jordan throughout the day of the crash that ultimately resulted in tragic consequences for which Jordan was criminally culpable. Much of the evidence

was not in dispute, and even Jordan acknowledged to police that he was responsible. Although we caution prosecutors to avoid such statements, we find no reversible error.

## V. Sentencing

[65] Jordan's final contention is that his 41-year sentence is inappropriate under Indiana Appellate Rule 7(B). This rule permits an appellate court's sentencing revision if, "after due consideration of the trial court's decision, the sentence is found to be inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). The Court's review under Rule 7(B) is deferential to the trial court's decision, and the burden is on the defendant to persuade the Court that the sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[66] When evaluating the appropriateness of a sentence, the Court first considers the statutory range established for that class of offense. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. Jordan's sentence consists of consecutive sentences of 35 years for Level 1 felony neglect of a dependent resulting in death, 3 years for Level 5 felony battery, and 1 year for each of the three Level 6 felony neglect convictions. The court also imposed a sentence of 1-year imprisonment for driving while suspended but ordered it served concurrently with the sentence for Level 1 felony neglect.

[67] At the time of Jordan's offenses, the sentencing range for a Level 1 felony was 20 to 40 years imprisonment, with an advisory sentence of 30 years. Ind. Code

§ 35-50-2-4 (2016). A Level 5 felony carried a sentence of 1 to 6 years imprisonment, with an advisory sentence of 3 years. Ind. Code § 35-50-2-6(b). And the range for a Level 6 felony ranged from six months to 2½ years imprisonment, with an advisory sentence of 1 year. Ind. Code § 35-50-2-7(b). The trial court thus imposed a sentence 5 years above the advisory level for the Level 1 felony and at the advisory level for the remaining felonies.

[68] As to the nature of the offense, Jordan argues he is less culpable than Skeens. He notes that she, unlike Jordan, was the parent of all four children, drove an unsafe car without proper restraints for two of the children, and was driving while intoxicated at the time of the accident. Jordan claims his offenses were primarily acts of omission and that he did not have legal authority to prevent her from driving her own unsafe car without a license or proper restraints and while intoxicated.

[69] Jordan's efforts to blame Skeens are unavailing, given their shared role in the crimes. Contrary to his claim, Jordan's affirmative actions endangered the children. These included his insistence that Skeens drive so he could drink beer when he knew she was intoxicated, the car was unsafe, and some of the children were not properly restrained. Jordan also exacerbated the dangerousness of their travel by punching Skeens multiple times as she drove at high speed.

[70] Jordan's offense resulted in the death of a 6-year-old child and the endangerment of three other children, including his own son. The trial court

aptly described the nature of the offense as "egregious," given that Jordan had "multiple opportunities" throughout the day to avoid his criminal actions and potentially prevent T.W.'s death and the trauma to the surviving children. *See generally* Ind. Code § 35-38-1-7.1(a)(3) (specifying as a statutory aggravating circumstance that the victim of the crime was less than 12 years old).

[71] As to his character, Jordan has no prior criminal history, but he admitted to abusing alcohol, various illegal drugs, and prescription opioids. Jordan also expressed remorse, although his blaming Skeens for the crime suggests some level of insincerity.

[72] In reviewing the appropriateness of a sentence, the Court's principal role is to attempt to leaven the outliers, not to achieve a perceived "correct" sentence. *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014). Jordan has failed to show that his 41-year sentence, which is 5 years above the advisory level for his collective crimes, is an outlier.

[73] We affirm the trial court's judgment.

Foley, J., and Felix, J., concur.

ATTORNEY FOR APPELLANT

Scott S. Mandarich
McClure McClure & Davis
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Jodi Kathryn Stein
Robert Yoke
Deputy Attorneys General
Indianapolis, Indiana